350 So.2d 1233 (1977)
Cinda BYRER, wife of and Brett H. Woodard
v.
SOUTHERN BAPTIST HOSPITAL, INC., et al.
No. 8300.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1977.
*1234 Davis, Saunders, Miller & Rizzo (James T. Davis and Benjamin B. Saunders, Metaire), for plaintiffs-appellees.
Joseph J. Weigand, Jr., Houma (Christopher B. Siegrist, Metaire), for defendants-appellants.
*1235 Before LEMMON, STOULIG and BEER, JJ.
LEMMON, Judge.
Plaintiff's employer, Southern Baptist Hospital, has appealed from a judgment awarding plaintiff workmen's compensation benefits for total and permanent disability. Issues on appeal are (1) whether plaintiff was injured by accident in the course of her employment, (2) if so, whether any continuing disability was caused by that work-related injury or by a subsequent automobile accident, and (3) whether plaintiff was totally disabled at time of trial.
Plaintiff had worked for defendant for two years as a registered nurse assigned to the surgical intensive care unit. Her duties included turning and moving patients in bed and lifting patients from one bed to another.
While moving a patient during the morning of July 2, 1974, plaintiff noticed stiffness in her lower back. At lunch, when she attempted to arise from a chair in which she had been seated for about five minutes, she experienced extreme weakness and stiffness in that area. She reported the complaint to the nurse in charge, mentioning that she had lifted an unusually heavy patient that morning. She remained on duty, but the pain became progressively worse.
The next day she was unable to report to work and was checked in the emergency room of another hospital by a doctor who advised her to remain in bed for a week. On July 11 she returned to her duties and worked for about three hours, but because of severe pain in her back and pulling in her left leg she left the job and consulted Dr. James Weilbacher, an orthopedic surgeon.
Finding mild spasm and a positive straight leg raising test, Dr. Weilbacher diagnosed a possible herniated disc at the L-4, L-5 level on the left and prescribed medication use of a lumbosacral corset, and several more days of bed rest. After four days plaintiff returned to work, wearing the corset. On July 18 she reported improvement to Dr. Weilbacher, who advised her to continue using the corset and to return in three weeks.
On August 2, 1974 plaintiff was involved in a rear end automobile collision. Dr. Weilbacher examined her and diagnosed moderate cervical strain and contusions of both knees. However, he did not detect any positive findings or record any complaints in the low back area. The doctor placed her in cervical traction in the hospital for four days.
By August 20 plaintiff had returned to work with some difficulty from neck pain, which was subsiding. On September 13 the neck was still improving, but plaintiff complained to the doctor (for the first time since the automobile accident) of continuing low back pain and aggravation of the earlier left leg pain. The doctor advised her to continue using the corset and to avoid heavy lifting. By October 24, 1974 the neck was asymptomatic, but the back problems continued. Dr. Weilbacher stated that the back symptoms in the L-4, L-5 area and the leg complaints were at that time about the same as before the accident, although subjectively more severe.
For the next several months, according to plaintiff, she was able to tolerate work pretty well and kept in touch with Dr. Weilbacher informally at the hospital during working hours. However, in May, 1975 her condition worsened considerably. Since Dr. Weilbacher was moving out of state, plaintiff on his advice consulted Dr. Ray Haddad, another orthopedic surgeon.
On examination Dr. Haddad found tenderness over the lumbosacral joints and in the area of the sciatic nerve and decreased sensation in the leg and three lateral toes. X-rays revealed degenerative changes, particularly at L-4 and L-5 on the left. He diagnosed a herniated disc and sciatica and prescribed bed rest, traction in the hospital and diagnostic studies. When test results were normal, plaintiff was discharged in an improved condition to continue on conservative treatment consisting of exercise and use of the corset.
*1236 Plaintiff returned to work on June 23, 1975, but was advised to avoid lifting and pushing heavy objects. She transferred to a section involving duties of a supervisory nature.
In October, 1975 plaintiff's symptomatology again increased, and she consented to the surgery recommended by Dr. Haddad. However, after a myelogram showed only minor changes which he considered not significant enough to warrant surgery, the doctor cancelled the scheduled operation. He maintained his previous diagnosis of a herniated disc, although he believed the condition was possibly subsiding.
Plaintiff subsequently moved to North Carolina, and at the time of the April, 1976 trial she had not yet been examined by the orthopedist to whom Dr. Haddad sent her records, but did have a scheduled appointment.
Dr. Haddad examined her on the day before trial and found a good range of motion, no spasm, no significant changes in the X-rays since May, 1975, and a normal straight leg raising test. He maintained his opinion that she had a ruptured intervertebral disc, but found the condition had subsided, and observed "she probably still does have some residual of that particular problem, but she appears to be doing well at the present time". He noted that she had regained most of the use of her foot and toes and that she no longer had overt signs of weakness. He felt that her present complaints were mostly of a fatigue type back discomfort after excessive use. He did not believe that future surgery was probable.
Work-Related Injury
An employee is entitled to compensation benefits if he "receives personal injury by accident arising out of and in the course of his employment". R.S. 23:1031. Defendant argues that there was no evidence of "an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury", as required by R.S. 23:1021(1)'s definition of "accident". Defendant's principal complaint is the lack of a single identifiable "event".
The Supreme Court in Chism v. Kaiser Aluminum & Chem. Corp., 332 So.2d 784 (La.1976), held that a compensation claimant has sustained his burden of proving an "accident" when the evidence establishes the disability resulted from occurrences on the job, even if the record does not establish which of several occupational incidents precipitated the ultimate giving way of the ligaments, cartilages or organs of the body.
The purposes of R.S. 23:1021(1)'s requirement of definiteness in time are to limit compensation to those disabilities caused by work-related incidents and to fix the date for determining prescription, wage rate, notice periods and such issues. If there is suddenness either in the precipitating incident or in the manifestation of disability, the requirement of an accident is usually satisfied. See Larson, Workmen's Compensation, 1A, § 39.10 (1973).
In the present case plaintiff's disabling condition manifested itself suddenly during the performance of her employment duties. These duties included activities which could cause low back pain. Furthermore, plaintiff's back was in excellent condition when she reported to work that morning, but she was disabled before the end of her work shift.
We conclude that the evidence established plaintiff sustained a compensable accident within the contemplation of R.S. 23:1031 and R.S. 23:1021(1).
Causation of Continuing Disability
Questioning the trial court's finding that any continuing disability was caused by the work-related July 2 injury, defendant points out that plaintiff had no radiating pain or other classic signs of disc involvement prior to the August 2 automobile accident and in fact had returned to work and was on the road to recovery when the later accident occurred.
Plaintiff was treated before and after the August accident by Dr. Weilbacher. He had initially diagnosed a possible ruptured *1237 disc and maintained that tentative diagnosis at the time of the automobile accident, although she had shown improvement and had returned to work wearing a corset. Plaintiff testified that between the two incidents she had no strength in her back and could not lift patients, carry linens, move quickly, or do house work. She also complained of "muscle weakness" or "stretching feeling" in the right leg, and Dr. Weilbacher characterized these complaints as radiating pain. The subsequent automobile accident caused a cervical injury without complaints or findings of increased back problems. Significantly, when the back symptoms worsened six weeks after the automobile accident, the symptoms were in the exact location as before that accident.
The trial court apparently concluded, as a matter of fact, either that plaintiff's condition caused by the work-related injury was not substantially affected by the automobile accident, or that the work-related incident was a substantial factor in bringing about the disability, even though the subsequent accident aggravated the first injury or otherwise contributed to the disabling condition.[1] We conclude the record contains sufficient evidence to support the finding of causation on either basis.
Extent of Disability
Defendant also questions the sufficiency of proof of total and permanent disability, arguing that plaintiff continued to work as a nurse until she resigned in anticipation of the ultimately cancelled surgery and that Dr. Haddad testified plaintiff at time of trial could perform nursing duties.
When questioned about plaintiff's present ability to return to work as a nurse, Dr. Haddad stated "I think she should try it" and "she should be able to perform most of her duties as a nurse". He cautioned, however, that plaintiff "has to be aware that she has a back problem" and should avoid or be careful about certain activities, particularly lifting heavy loads. He believed that she could handle children and small adults unassisted with no problems, but should obtain help to handle larger persons.[2]
The determination of the extent and duration of disability on this record is somewhat difficult. Although plaintiff's condition had deteriorated by October, 1975 to the extent that surgery was deemed necessary, the cancellation of surgery and the move to North Carolina created a void in the medical evidence between November, 1975 and April, 1976. Dr. Haddad's examination of the day before trial (after plaintiff had not worked in six months) revealed vast improvement. However, plaintiff's medical history since the accident had been marked by peaks and valleys, and the doctor's qualified and cautious advice was to "try it" at nursing. His overall testimony neither establishes that plaintiff had regained the ability to perform substantially all of her duties without substantial pain and without substantial risk of reactivation of the disabling symptoms or that her return to full duties might expose her to risk *1238 of further injury because of susceptibility to reactivation of symptoms.[3]
We are reluctant to decide the issue of total disability on the present record, and the approach fairest to both sides is to remand the case for evidence as to plaintiff's condition upon resuming work activities. Both sides were primarily occupied at trial with the hotly contested issues involving a work-related injury and effect on causation of the second accident. Indeed, defendant never had plaintiff examined by a doctor of its choosing, even after she quit working and surgery was scheduled. Of course, the case could be reopened after six months for review and possible modification of the judgment, but we are disinclined under the peculiar circumstances of this case to place the burden on either side to show the change necessary to obtain modification.
Accordingly, the judgment of the trial court is affirmed to the extent that compensation benefits and medical expenses are awarded through April 29, 1976.[4] That portion of the judgment awarding benefits and medical expenses after April 29, 1976 is set aside, and it is ordered that the case be remanded for additional evidence and decision in accordance with the views expressed above.
AFFIRMED IN PART, SET ASIDE AND REMANDED IN PART.
BEER, J., concurs and assigns reasons.
BEER, Judge, concurring.
I respectfully concur in that portion of the opinion which remands the case for additional evidence although I am tentatively of the view that Dr. Haddad's testimony, considered in the context in which it was given, essentially supports a conclusion that Mrs. Woodard could, at the time of trial, perform her duties as a nurse and was not disabled.
NOTES
[1] Either conclusion can be implied from the judgment which was rendered after trial of the two consolidated cases. In the automobile accident case the court awarded $4,000.00 for the cervical injury of three months duration, only $2,000.00 for aggravation of the low back injury, one-half of medical expenses between the date of the automobile accident and the date the neck injury was asymptomatic, and one-half of the estimated future medical expenses for back surgery. The hospital was assessed with the medical expenses incurred after the neck injury was cured, as well as one-half of the estimated future medical expenses.
[2] Other evidence showed that a nurse is never required to move patients alone and that assistance in handling patients is provided, particularly in the intensive care unit where each nurse is assigned no more than two patients and at least one aide. However, if handling heavy loads is a substantial part of a nurse's duties, then it is irrelevant whether assistance in doing so is available. The law looks only to the occupational capacity of the injured employee, and a claimant is considered disabled if he can perform his normal duties only with the assistance of others. Gorbach v. Prager, Inc., 310 So.2d 604 (La. 1975). On this point Dr. Weilbacher stated that a nurse's duties are strenuous.
[3] The latter basis for finding disability involves a variation of the rule that an employee is totally disabled when continuation of the same work would present a potential danger to his health. See Gonzales v. Coastal Wire Warehouse, Inc., 328 So.2d 923 (La.App.4th Cir. 1976).
[4] The period for payment of benefits through date of trial is relatively short, since the trial court ordered benefits to begin as of October, 1975, when plaintiff resigned in anticipation of surgery.