389 So.2d 367 (1980)
Jules DUSANG
v.
HENRY C. BECK BUILDERS, INC. and Aetna Life and Casualty Insurance Company.
No. 67111.
Supreme Court of Louisiana.
October 6, 1980.
*368 Joseph M. Singerman, Singerman, Cosentino, Broussard, Toups & Troyer, New Orleans, for plaintiff-applicant.
Lawrence J. Duplass, Johnson & Duplass, New Orleans, for defendants-respondents.
Darleen M. Jacobs, New Orleans, amicus curiae for Gary Taintor.
DIXON, Chief Justice.[*]
The plaintiff Jules Dusang brought this suit against his employer, Henry C. Beck Builders, Inc., and its insurer, Aetna Life and Casualty Insurance Company, for workmen's compensation benefits. The trial court awarded the plaintiff compensation benefits of $95.00 per week for total and permanent disability. A five judge panel of the Fourth Circuit Court of Appeal amended the trial court's decision in a three-two decision; 379 So.2d 775. The appellate court held that the evidence supported the trial court's finding that the plaintiff suffered substantial pain even though he continued to work regularly after his accident; however, the court held that the plaintiff was only entitled to an award of benefits based on partial disability. Application for rehearing was denied and this court issued a writ of review on May 30, 1980.
This case presents two principal issues: whether the plaintiff did in fact suffer substantial pain even though he worked regularly after his accident, and whether an injured worker who continues to work (in the same job or in a job similar to the one he had before his injury) but in substantial pain, should be considered totally or partially disabled under the amended version of the Louisiana Workmen's Compensation Act (R.S. 23:1221). The plaintiff argues that the appellate court was correct in finding that he continued to work in substantial pain, but was wrong in finding him partially, rather than totally, disabled.
The plaintiff was employed as an ironworker and a welder by Henry C. Beck Builders, Inc. when he slipped and fell while walking across a wet concrete floor on September 21, 1976, injuring his right shoulder *369 and wrist. He was treated, returned to work, but continued to have pain.[1]
It is well settled that:
"... a claimant will not be held to be disabled within the meaning of the Workmen's Compensation Act solely because he suffers some residual pain and discomfort when he attempts to work following a work-connected accident. The residual pain or discomfort in such a circumstance will be considered as being disabling only if it is substantial or appreciable pain. Glidden v. Alexandria Concrete Company, 242 La. 626, 137 So.2d 894 (1962); Jackson v. American Mutual Liability Insurance Co., 242 So.2d 903 (La.App. 3 Cir. 1971).
The claimant who alleges disability because of inability to perform his usual and regular duties without substantial or appreciable pain must establish the existence of that condition to a reasonable certainty and by a fair preponderance of testimony. Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138 (1964); Johnson v. R. P. Farnsworth and Company, 186 So.2d 405 (La.App. 1 Cir. 1966)." Breaux v. Kaplan Rice Mill, Inc., 280 So.2d 923, 925 (La.App. 3d Cir. 1973).
The record is convincing that plaintiff is in pain; no evidence contradicts his testimony that it is constant. The pain interferes with overhead work and heavy lifting. Nevertheless, he continues to work as a welder, apparently performing all the duties his job requires, except for the heaviest. *370 We find, as did the courts below, that he works in "substantial and appreciable" pain.
Prior to 1975, R.S. 23:1221 defined total disability as the inability of a workman "to do work of any reasonable character." The courts construed this language broadly in favor of injured workmen, holding that an employee should be considered totally disabled whenever his injuries prevented him from performing work of the same or similar nature as that which he was accustomed to performing before his injury. Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9 (1932). The courts also held that an employee who was unable to perform his usual and normal duties without substantial pain was totally disabled. Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1 (1953).
In 1975 the legislature amended the Workmen's Compensation Act and redefined total disability, apparently in order to treat as partially disabled many claimants who previously would have been treated as totally disabled (although earning substantial wages) and to increase the benefits payable to totally disabled employees.
The amended act defines total disability as the inability "to engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience..." (R.S. 23:1221(1) and (2)). This new language suggests that a worker is totally disabled only if he cannot engage in any gainful occupation for wages. A person who can engage in a gainful occupation is not totally disabled, even if such occupation is not the same or similar to his old occupation and even if it is not one for which he is particularly fitted by education, training or experience. In their Louisiana Civil Law Treatise, Workers' Compensation, Vol. 13, 2d Ed., § 272, 598, Malone and Johnson state that the new definition clearly reveals the legislature's intent to overrule the liberal disability standard enunciated in Knispel v. Gulf States Utilities Co., supra.
Under the new act, an employee is deemed partially disabled if he is unable "to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience ..." (R.S. 23:1221(3)). This amended statutory definition of partial disability is substantially the same as the traditional judicial definition of total disability, suggesting that the legislature wished to include in the partial disability category many of the cases previously treated as total disability cases.
Unfortunately, the new act does not address the question of whether an employee who returns to work after an injury, and continues to work while enduring substantial pain, should be considered totally or partially disabled. Some courts have construed the legislature's failure to include language in the act legislatively altering or overruling the old jurisprudence as an expression of the legislature's intent to leave the jurisprudence undisturbed. (See Phillips v. Dresser Engineering Co., 351 So.2d 304, 309, fn. 3 (La.App. 3d Cir. 1977)), writ den. 353 So.2d 1048 (La. 1978). They have followed the long-standing jurisprudential rule that a worker who returns to work out of economic necessity but functions only with substantial pain is entitled to total disability benefits. Phillips v. Dresser Engineering Co., supra, and Jones v. Arnold, 371 So.2d 1258 (La.App. 3d Cir. 1979). Other courts have attempted to reconcile the jurisprudential rule with the express terms of the statute, holding that an injured employee should be considered totally disabled if he is unable to pursue any gainful employment without experiencing substantial pain. (Rachal v. Highlands Ins. Co., 355 So.2d 1355 (La.App. 3d Cir. 1978), writ den. 358 So.2d 645 (La. 1978); Simmons v. State of La. Dept. of Transportation and Development, 368 So.2d 770 (La.App. 2d Cir. 1979)). In Rachal and Simmons the claimants experienced back pain so severe that they had *371 difficulty sitting or standing for long periods. The courts concluded that the claimants would experience pain in all types of work and therefore found them totally disabled. In both cases the courts rejected the appellants' contentions that an employee could not be considered totally disabled if he could engage in some type of employment, even if he did so in substantial pain. Some courts have held that if an employee can work in some type of job without experiencing pain he should be considered partially disabled. In Conlay v. Houston General Ins. Co., 370 So.2d 196 (La.App. 3d Cir. 1979), the court found the claimant who suffered from a knee injury, partially disabled, because he could work in some position without experiencing substantial pain, even though it might not be his former occupation. Similarly, in Dufrene v. St. Charles Police Jury, 371 So.2d 378 (La.App. 4th Cir. 1979), the court deemed the claimant partially disabled because, while his wrist injury prevented him from continuing in his former occupation of heavy equipment operator, it did not keep him from engaging in lighter work of a similar nature.
Recently, in Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093, this court reversed the lower courts and found the claimant, a young man who worked as a janitor, totally disabled. The claimant had severely burned his legs and continued to suffer pain and itching from the scars. This court noted that the claimant was unqualified to take a sedentary indoor job which might alleviate his pain because of his physical and mental capacity and therefore was limited to janitorial work, a job in which he would continue to experience pain. In the case at hand, testimony as to Mr. Dusang's pain is not so strong as in Whitaker's case. Dusang himself stated that the work as an electrician's welder was easier than ironwork. Moreover, Dusang is not the marginal employee Whitaker is. Although Mr. Dusang did state that he would have more opportunities for work if he could work as an ironworker and welder, the testimony at trial does not clearly indicate that he would have great difficulty finding work.
Malone and Johnson have recommended that Louisiana courts adopt the "odd lot" doctrine in interpreting the new total disability provision. Under this doctrine a claimant is considered totally disabled if his injury makes him an "odd lot" in the labor market-in other words, if he can hold various jobs periodically, but the kind of work he can do is so limited that a reasonably stable market for it does not exist. An "odd lot" claimant need not be absolutely helpless to qualify for total disability status. If the claimant can prove that his physical condition, his mental capacity, his education, training, age or other factors combine to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the "odd lot" category. The employer or insurer must then show that some form of suitable work is regularly and continuously available to the claimant in the area where he resides.
While this court has not adopted the "odd lot" doctrine explicitly, elements of the doctrine have appeared in previous decisions of this court. In both Futrell v. Hartford Accident & Indemnity Co., 276 So.2d 271 (La. 1973) and Lewis v. St. Charles Parish Hospital Service District, 337 So.2d 1137 (La. 1976), this court held that claimants were totally disabled because their injuries substantially impaired their ability to compete in the labor market. In Futrell, Justice Barham stated:
"`. . . The law fixes disability in terms of loss of earning capacity, which includes the extent of physiological impairment as only one factor. . . . loss of earning capacity. . . can be determined only by reference to the state of the labor market, hiring practices, the humanity of obliging a man to work in pain, and other broad policy considerations which the physician is not equipped nor authorized to evaluate.' Malone, Louisiana Workmen's Compensation § 272 (Supp. 1964)...." 276 So.2d at 274.
Factors such as education, mental capacity and physical impairment also played a part in this court's decision in Whitaker.
*372 The "old lot" concept can also be applied to substantial pain cases, since a worker who, due to his injury, can function only with substantial pain or with the help of fellow workers may not be considered a particularly desirable employee. Thus, if a claimant's pain appreciably limits the types of work available to him and greatly diminishes his ability to compete in the labor market, he could be treated as an "odd lot" worker and be awarded total disability status, unless there is proof that jobs are realistically available to him.
On the other hand, if a worker cannot perform the same work that he did before his injury because it causes him substantial pain, but he has the mental capacity and physical capability to perform other jobs which are available, he should be considered partially disabled. Such classification will protect him in any work in which he earns less than he did before his injury. Moreover, he will not be deprived of compensation on the theory that there is less strenuous work available, as the employer will have to prove the availability of other jobs.
In this case, even though we agree with the trial court and the Court of Appeal that Mr. Dusang works in substantial pain, he is not totally disabled. Except for the six weeks following his termination at Beck, Mr. Dusang has worked steadily following his injury. The pain has not been so disabling as to require him to be hospitalized or to miss work. While his coworkers testified that they needed to help him with heavy lifting following the accident, his foreman at Beck testified that he never had to substitute any employee for Mr. Dusang because of his inability to do the work. Mr. Dusang has been able to find work as a welder out of the electrician's hall, and there is no clear evidence that he will not be able to find work in the future. At the time of trial he was earning more than he earned before his accident; the partial disability status will protect him in the future.
The judgment of the Court of Appeal is affirmed,[2] at appellant's cost.
MARCUS, Justice (concurring).
I concur in the conclusion that, even though Mr. Dusang works in substantial pain, he is not totally disabled. Clearly, under the facts, he can and was engaged in a gainful occupation for wages. La. R.S. 23:1221(2). I also agree that he is partially disabled because he is able to perform duties in which he was customarily engaged when injured and duties of the same or similar character, nature, or description for which he was fitted by education, training and experience. La. R.S. 23:1221(3). Accordingly, I respectfully concur.
NOTES
[*] Honorable Gerald P. Fedoroff, Judge, Civil District Court, Orleans Parish, participated in this decision as an Associate Justice Ad Hoc. Lemmon, J., recused.
[1] After the accident he saw a Dr. Paine, an industrial doctor, who diagnosed his problem as tendonitis and administered an electrical heat treatment. A week later the plaintiff's wrist had improved but the pain in his shoulder continued to give him discomfort while working. He was referred to an orthopedic surgeon, Dr. Alldredge, who saw him on October 22, 1976, and diagnosed the condition as biceps tendonitis of the right shoulder and sprain of the right wrist. X-rays of the shoulder and wrist revealed no abnormality; shoulder and wrist motion were normal but there was some soreness. At this visit and at subsequent visits on October 27, November 2 and November 8, Dr. Alldredge gave Mr. Dusang cortisone injections for the shoulder pain. The wrist did not need treatment. In his deposition. Dr. Alldredge stated that he thought Mr. Dusang's condition was improving with each visit because he continued to work and his complaints of pain diminished. He testified that a patient with Mr. Dusang's condition nearly always recovers completely without any permanent disability and without needing surgery. However, he acknowledged that in unusual cases a person could continue to have pain and to require surgery. On January 21, 1977, Mr. Dusang's employment was terminated because the ironworking phase of the construction project was completed. He received unemployment compensation for about six weeks; he then worked briefly at two other jobs and at the time of trial was working at the nuclear plant at Taft as an electrician's welder, a job which he alleged was less strenuous than ironworking. At trial Mr. Dusang testified that he still experienced pain and that the pain had only left him briefly when he received the cortisone shots. He remarked that he had continued to work despite the pain because he had a family to support. In answer to the question, "Can you do any type of work today without that shoulder or wrist bothering you?" Mr. Dusang answered no.

On February 17, 1977, Mr. Dusang saw Dr. Adatto, an orthopedic surgeon, who diagnosed his condition as bicipital tendonitis of the right shoulder and mild reactive synovitis of the right wrist. Dr. Adatto found a mild limitation of the range of motion for the shoulder and wrist. He gave Mr. Dusang some medication and an injection. Mr. Dusang saw Dr. Adatto again on March 3 and March 10; he was still experiencing pain intermittently, and Dr. Adatto suggested that if the medication and shots did not work, surgery might be the only logical approach. Mr. Dusang last saw Dr. Adatto on July 21, 1977, at which time he told the doctor that he did not want surgery. Dr. Adatto then said there was nothing more to be done and recommended over the counter medication for the pain. At trial Dr. Adatto characterized the plaintiff's disability as less than five per cent for the shoulder; he found no disability of the neck or wrist. He noted that he was assigning this disability because motions such as flexing, extending and rotating the arm would produce more pain and discomfort than other activities because they stretched the bicipital tendon. He also testified that when a person had this type of trouble for a period of time, it was likely to be a chronic problem, curable only by surgery.
Several coworkers also testified on plaintiff's behalf that he complained of pain in his arm and shoulder almost every day while at Beck and at his current job. They stated that Mr. Dusang needed help lifting and could not do heavy work for himself as he had before his accident. The plaintiff's wife testified that he had trouble sleeping and could not do chores around the house as he had before the injury.
[2] "... In any week in the future that the September, 1976 injury prevents plaintiff from earning full wages, benefits are due in the amount of the difference between the wages he was earning at the time of the injury and any lesser wages he actually earns in that week in any gainful occupation for wages, until there has been a payment of benefits for a total of 425 weeks or until the pain caused by the injury either becomes insubstantial or becomes totally disabling." 379 So.2d 775, 778-779.