391 So.2d 528 (1980)
Neva Lacour LEMOINE, Plaintiff and Appellee,
v.
MARKSVILLE INDUSTRIES, INC. and Insurance Company of North America, Defendants and Appellants.
No. 7876.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1980.
Rehearing Denied January 2, 1981.
*530 Provosty, Sadler & deLaunay, David P. Spence, Alexandria, for defendants-appellants.
Ben C. Bennett, Jr., Marksville, for plaintiff-appellee.
Before CULPEPPER, CUTRER and SWIFT, JJ.
CULPEPPER, Judge.
This is a workmen's compensation case. Plaintiff allegedly sustained two accidents, the first a back injury in November of 1978 and the second a fracture in the shoulder joint in July of 1979. The trial judge found plaintiff totally and permanently disabled as a result of the two accidents, but he denied penalties and attorney's fees. Defendants appealed. Plaintiff has not appealed nor answered the appeal.
The substantial issues are: (1) Was the back injury caused by a work-related accident? (2) If so, does plaintiff have any disability residual to the back injury? (3) Is plaintiff totally and permanently disabled, or is she only partially disabled?
The evidence shows that plaintiff, a 47-year-old widow, was employed as a pants presser by Marksville Industries, Inc., a garment manufacturer. Stacks of pants were delivered to her station on a platform cart and placed to her right. She took each pair of pants from the cart, pressed them on the machine in front of her and then turned to her left and hung them up on a rack. She performed this procedure approximately 960 times a day. She was paid 2.326 cents per pair of pants pressed, and earned $127 to $132 per week.
After about one year on this job, Mrs. Lemoine began experiencing pains in the lower part of her back and radiating down her left leg. The pain started in October of 1978 and became progressively worse. She testified that on November 2, 1978 she "couldn't stand anymore," so she asked her supervisor for permission to go home. However, on the supervisor's request she completed that day's work. On the next day, she finished work at 11:30 A.M. and went to see Dr. Bryan McCann. He diagnosed tendinitis and arthritis of the lower back and prescribed medication for pain.
The pain persisted. Plaintiff did not return to work. She went to see Dr. Carl S. Jory, a general practitioner of Bunkie. He placed her in a hospital in traction for several days. She returned home but still had back and leg pains.
She next went to Dr. Daniel Kingsley, an orthopedic surgeon in Alexandria. He performed a myelogram which was inconclusive as to disc pathology.
On December 18, 1978, plaintiff was examined by Dr. Babson Fresh, a neurosurgeon of Alexandria, who diagnosed a herniated disc in the mid-back region. A few days later, Dr. Fresh performed a partial removal of the disc at the L-5, S-1 level. Dr. Fresh testified plaintiff had a good result from the surgery. On May 2, 1979, he discharged her for return to work. He did not see her after that date.
Plaintiff returned to her same job as a pants presser on or about June 6, 1979. She testified she was able to do the work but at night when she got home she had pain in her lower back and left leg. Nevertheless, she continued to work because she was a widow and needed the wages. She had received no workmen's compensation benefits to that time.
On July 16, 1979, while at work, she tripped over a pallet and hurt her shoulder. She went to Dr. Edmund J. Kalifey, a general practitioner of Marksville, who diagnosed a fracture of the upper part of the left humerus, in the shoulder joint. Dr. Kalifey placed her left arm in an immobilizer to allow the fracture to heal. After *531 about one month, he advised she start exercising by moving her fingers and wrist and gently moving her arm outward. With increased exercised, her progress was good until about November 2, 1979 when she had a gallbladder attack, kidney trouble and phlebitis and stopped her exercises. These conditions were treated, and on November 15, 1979 Dr. Kalifey found her shoulder motions were improving and recommended she try to return to work.
Plaintiff testified she did not think she could return to her job as a pants presser, so she called the plant and told them she could not return to that job. She says she could not lift her left arm up above 45 degrees and could not turn the arm toward her back, so she could not hang the clothes up. Also, she says she was still having pain in her back radiating down her left leg.
After Dr. Kalifey discharged her in November of 1979, plaintiff tried to work in a pizza hut as a cook and dishwasher. She testified the sinks were very low and she is tall, and the bending required by the dishwashing and cooking hurt her back and also her shoulder. She worked at this job only eight days.
Plaintiff also testified she is a licensed beautician, but she did not try to re-enter that trade because of the limited motion of her arm and shoulder.
Also, she testified there may be certain jobs at the garment factory which she could perform, such as inspector, but that she did not apply for any positions of that type.
When defendants received notice of the shoulder injury, workmen's compensation payments were initiated and were paid from July of 1979 through November of 1979, which latter date was when Dr. Kalifey recommended she return to work. This suit was filed on December 31, 1979.
On February 6, 1980, plaintiff was examined, on request of her attorney, by Dr. Francis C. McMains, an orthopedic surgeon of Baton Rouge. He testified the left shoulder had become frozen due to a prolonged period of immobilization of the arm and failure to exercise it. He recommended an intensive physical therapy program to attempt to stretch and strengthen the tendons and muscles. It was Dr. McMain's estimate that plaintiff had 20 to 25% partial disability of the shoulder at the time of his examination, based on her inability to raise her left arm above about 45 degrees or to internally rotate it fully without substantial pain. Dr. McMain would not speculate as to whether, or the the degree to which and intensive physical therapy program would reduce her disability. He said he thought it would improve, but he could not be certain. On receiving Dr. McMain's report, defendants reinstated workmen's compensation benefits from the date of the shoulder injury on July 16, 1979, and they were still paying benefits at the time of trial.
At the time of trial on February 26, 1980, plaintiff was not working. She had not worked since the eight days she worked at the pizza hut in November or December of 1979.
In his written reasons, the district judge concluded the back injury was work-related, and that plaintiff is permanently and totally disabled as a result of both the back injury and the shoulder injury. The judgment appealed orders the payment of weekly benefits in the sum of $77.32 beginning November 3, 1978 and continuing during disability.
WAS BACK INJURY WORK-RELATED?
The first issue is whether the back injury resulted from a work-related accident. Defendants contend that since the herniated disc developed gradually, rather than suddenly, there was no accident within the meaning of LSA-R.S. 23:1021(1) which provides:
"(1) `Accident' means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury."
Malone and Johnson, Workers' Compensation, 2nd Ed., Sections 213-216 discusses generally the development of Louisiana jurisprudence construing the above quoted statutory provisions. The most recent Supreme *532 Court case we find dealing with the particular question at issue here is Chism v. Kaiser Aluminum and Chemical Corporation, 332 So.2d 784 (La.1976). In that case plaintiff performed heavy manual labor at defendant's plant for several years. He stepped in a hole and sought medical treatment for back pain at the company first-aid station. About three months later, he again suffered pain while at work and sought treatment at the first-aid station. Four months later, he again experienced pain on the job and went to the first-aid station, where he was referred to the company physician. Finally, after several days of going to work and reporting to the first-aid station, the pain became so severe that he was hospitalized. A herniated disc was diagnosed and surgery ensued. The court held:
"It is true that the record does not establish which of the several occupational incidents finally ruptured the disc. We find that it does establish, however, that one or more of the accidents on the job aggravated plaintiff's back condition to the extent that he became disabled. Thus, under the jurisprudence, the plaintiff has discharged his burden of proof."
See also Byrer v. Southern Baptist Hospital, Inc., 350 So.2d 1233 (La.App. 4th Cir. 1977); Satterwhite v. Zurich Insurance Company, 199 So.2d 429 (La.App. 1st Cir. 1967); York v. E. I. Dupont de Nemours & Company, 37 So.2d 68 (La.App. 1st Cir. 1948); and Romero v. Otis International, 343 So.2d 405 (La. App. 3rd Cir. 1977).
Applying these jurisprudential rules to the present case, plaintiff has sustained her burden of proving a work-related accident causing back injury. Although the evidence does not show what specific incident caused her first back pain, or which incident finally herniated the disc, the evidence clearly shows the numerous rapid twisting and turning movements required by her duties aggravated plaintiff's existing back condition, whatever its origin, to the extent that she finally became disabled. Clearly, the trial judge was not manifestly erroneous in his factual conclusion that plaintiff proved a job-related accident caused the herniated disc.
DOES PLAINTIFF HAVE DISABILITY RESIDUAL TO THE BACK INJURY?
The next question is whether plaintiff proved that at the time of trial she had disability residual to the back injury. Defendant makes a respectable argument that following the disc surgery Dr. Fresh discharged plaintiff for return to work as a pants presser, that she actually returned to this work and performed it for about one month until she fractured her shoulder, that she never complained of her back pain to Dr. Kalifey, who treated her for her shoulder, and that she only mentioned to Dr. McMains that she had had a compensable back injury and underwent surgery in 1978. Thus, it appears that after plaintiff returned to work following the disc surgery, she did not seek further medical treatment for her back and did not complain to any physician about her back.
On the other hand, plaintiff testified that when she returned to work as a pants presser, following the disc surgery, she was able to do the work but in pain, and that when she went home at night she had pain in her back and her left leg. Her daughter, who lives with her, testified as to plaintiff's pain in her back and leg at night after working. As stated above, plaintiff also testified that when she tried to work in the pizza hut, following the shoulder injury, she had to quit after eight days because of the combination of arm and shoulder pain and also pain in her back from bending over a low sink washing dishes. Furthermore, plaintiff testified at trial that the pain in her back and leg continued and still existed.
Plaintiff also relies on the testimony of Dr. Fresh that even though he discharged her to return to work following the disc surgery it would be "possible" that activity could cause pain in her mid-back and her left leg. However, since Dr. Fresh did not see plaintiff again after he discharged her in May of 1979, he could express no opinion as to whether the back and leg pain reoccurred.
As indicated from the above brief discussion of the evidence, there is a close *533 factual question as to whether at the time of trial plaintiff had any disability residual to the back injury. Under the circumstances, we defer to the rule of appellate review that the finding of fact by the trial judge will not be disturbed unless he is manifestly erroneous or clearly wrong.
Defendants incorporated in their answer a plea that Mrs. Lemoine's claim for benefits arising out of her back injury was prescribed by the lapse of one year from the date of the alleged accident until the date of filing suit. However, defendants concede that should we find, as we have, that plaintiff's disability is caused by the combination of her back and shoulder injuries, the back injury can be considered in assessing her disability.
IS PLAINTIFF TOTALLY OR ONLY PARTIALLY DISABLED?
The next issue is whether plaintiff is totally or only partially disabled. Only one week before this case was argued in our court, the Supreme Court rendered its decision in Dusang v. Henry C. Beck Builders, et al., 389 So.2d 367 (La.1980). That court, for the first time, answered several questions which have arisen as to the new definitions of total disability, as distinguished from partial disability, contained in LSA-R.S. 23:1221 as amended in 1975.
The facts in Dusang were that plaintiff was employed as an iron worker and a welder when he slipped and fell, injuring his right shoulder and wrist. He returned to work as a welder, but continued to have pain. The pain interferred with his overhead work and heavy lifting. Nevertheless, he performed all the duties his job required, except for the heaviest. In the following portion of its decision, the Supreme Court stated the new "odd lot" doctrine, but then concluded Mr. Dusang did not fall into the "odd lot" category and was not totally disabled:
"Malone and Johnson have recommended that Louisiana courts adopt the `odd lot' doctrine in interpreting the new total disability provision. Under this doctrine a claimant is considered totally disabled if his injury makes him an `odd lot' in the labor market-in other words, if he can hold various jobs periodically, but the kind of work he can do is so limited that a reasonably stable market for it does not exist. An `odd lot' claimant need not be absolutely helpless to qualify for total disability status. If the claimant can prove that his physical condition, his mental capacity, his education, training, age or other factors combine to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the `odd lot' category. The employer or insurer must then show that some form of suitable work is regularly and continuously available to the claimant in the area where he resides. (Emphasis supplied)
* * * * * *
"In this case, even though we agree with the trial court and the Court of Appeal that Mr. Dusang works in substantial pain, he is not totally disabled. Except for the six weeks following his termination at Beck, Mr. Dusang has worked steadily following his injury. The pain has not been so disabling as to require him to be hospitalized or to miss work. While his co-workers testified that they needed to help him with heavy lifting following the accident, his foreman at Beck testified that he never had to substitute any employee for Mr. Dusang because of his inability to do the work. Mr. Dusang has been able to find work as a welder out of the electrician's hall, and there is no clear evidence that he will not be able to find work in the future. At the time of trial he was earning more than he earned before his accident; the partial disability status will protect him in the future."
Applying the above stated rules to the present case, the first question is whether plaintiff has made out a prima facie case that she is in the "odd lot" category. We conclude she has. We have found above that as a result of the back injury plaintiff still has pain in her mid-back and left leg which disables her from *534 many activities such as bending, twisting or turning without substantial pain. In addition, the shoulder injury resulted in her not being able to raise her left arm above 45 degrees or rotate it internally toward the back without substantial pain. Clearly, plaintiff cannot return to work such as that of a pants presser, which she was performing at the times of the accidents. Furthermore, plaintiff made out a prima facie case that she cannot return to employments such as a cook or dishwasher in a pizza hut or as a beautician. Also, unlike the plaintiff in Dusang, Mrs. Lemoine has not worked after her shoulder injury, except for the eight days which she tried to perform the duties of a cook and dishwasher at a pizza hut and was unable to do so.
Having concluded plaintiff made out a prima facie case that she is an "odd lot" employee, the next question is whether the defendants have shown that some form of suitable work is regularly and continuously available to the claimant in the area where she resides. Although counsel did not have the benefit of the Dusang decision when this case was tried, the defense did make some effort to show that plaintiff could perform some types of work for wages. They point to the testimony by plaintiff that there may be jobs at the garment factory which she could perform, such as inspector, but that she had not applied for any positions of that type. They also argue that under the testimony of Dr. Kalifey and of Dr. McMain, the disability resulting from the shoulder injury is only a limitation in raising the left arm above 45 degrees or rotating it internally toward her back. These two physicians stated plaintiff should be able to perform work which did not require use of the left arm beyond these limitations. However, in answer to this latter argument regarding the testimony of Dr. Kalifey and of Dr. McMain, we note these two physicians considered only disability related to the shoulder injury and not to the back injury.
Although this also is a close factual question, we do not find the trial judge was manifestly erroneous or clearly wrong in concluding plaintiff is totally disabled.
Of course, if plaintiff returns to regular work which would remove her from the "odd lot" category, or if other evidence develops that plaintiff's incapacity has diminished, defendants can seek judicial review at any time six months after the rendition of the judgment, under the provisions of LSA-R.S. 23:1331.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants-appellants.
AFFIRMED.
SWIFT, J., dissents with written reasons.
SWIFT, Judge, dissenting.
The Supreme Court of Louisiana has indicated in Dusang v. Henry C. Beck Builders, 389 So.2d 367 (La.1980), that it intends to apply the "odd lot" doctrine in a proper case. Nevertheless, I must dissent from the majority's application of such rule in present suit, because I consider it to be a complete disregard, not just of the intent, but the clear express language of the 1975 amendment to our workmen's compensation act.
Total disability, either temporary or permanent, is defined in LSA-R.S. 23:1221(1) and (2) as the inability of an employee "to engage in any gainful occupation for wages" regardless of whether the job is the same or similar to that which he was doing when injured and "whether or not" it is "an occupation for which the employee ... was particularly fitted by reason of education, training, and experience..." In other words, if the injured employee can perform the duties of any gainful occupation, he is not totally disabled no matter what he is particularly fitted to do by training, education or experience.
Contrary to this clear and unmistakable legislative language, the "odd lot" doctrine calls for a consideration of the injured employee's job qualifications by education, training and experience in determining whether or not he is totally disabled. Therefore, I do not think the rule can be *535 applied in making such a determination under our present workmen's compensation statutes.
I have always believed that, subject to constitutional limitations, laws are to be made and changed by our legislative bodies, not the courts. Otherwise, the people are deprived of their right to make the laws by which they are governed and this bulwark of freedom is eroded.
For the foregoing reasons, I respectfully dissent.