414 So.2d 1323 (1982)
Charles A. HERRIN, Plaintiff-Appellee,
v.
GEORGIA CASUALTY & SURETY COMPANY, Defendant-Appellant.
No. 14827.
Court of Appeal of Louisiana, Second Circuit.
April 5, 1982.
*1324 Hall, Lestage & Lestage by David R. Lestage, DeRidder, for defendant-appellant.
Ford & Nugent by Howard N. Nugent, Jr., Alexandria, for plaintiff-appellee.
Before HALL, FRED W. JONES, Jr. and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
Finding that a workmen's compensation claimant was totally and permanently disabled as a result of an on-the-job accident, the trial court awarded plaintiff judgment against the defendant insurance company for benefits at the maximum rate of $130 per week for the duration of his disability, *1325 subject to a credit for 17 weeks compensation benefits paid by defendant to plaintiff.
Defendant appeals, contending that (1) plaintiff failed to prove a causal connection between his disability and the on-the-job accident, particularly in view of a second unrelated accident in which plaintiff was involved several months after the first accident; (2) since plaintiff performed substantially the same work after the on-the-job accident as before, he had either fully recovered from that accident or was only partially disabled as a result thereof; and (3) plaintiff failed to establish entitlement to the maximum allowable benefit of $130 per week.
We amend the trial court judgment to reduce the weekly benefit award, but otherwise affirm.
Factual Context
On April 14, 1978 the 76 year old plaintiff was engaged in the course of his employment by a timber company, using his own truck to haul wood for which he was compensated on a per cord basis. When attempting to go up a hill, the brakes on the heavily loaded truck failed and the vehicle rolled backwards, turning over in a ditch. Plaintiff left his truck and walked a mile or so to seek the assistance of other workers in that area of the woods. With their machinery, the latter uprighted and reloaded plaintiff's truck. Plaintiff completed his work day and then reported the accident to his employer, relating that he was "shook up" somewhat by the incident.
That evening, since he was experiencing some discomfort as a result of his accident, plaintiff was taken by his wife to consult their family physician, Dr. Harry Winters, in Columbia. Noting that plaintiff was complaining of chest and back pain, Dr. Winters gave him a shot and directed that he return the following day. On April 15, 1978 Dr. Winters had plaintiff admitted to the Caldwell Hospital for observation and treatment.
During his stay in the hospital, plaintiff was visited by his sister-in-law, Mrs. Majorie Guinn, owner of the timber company for which he worked. Asked if he desired his employer to report the accident to her workmen's compensation insurance carrier, plaintiff replied that he "didn't want to fool with it right now." Be that as it may, Mrs. Guinn did, soon thereafter, give a claims representative of the defendant insurance company informal notice of the accident.
Plaintiff was discharged from the hospital on April 19, 1978, but remained under the care and treatment of Dr. Winters for his neck and back condition. On referral by Dr. Winters, plaintiff was examined on May 24, 1978 by Dr. Claire Justice, a West Monroe thoracic surgeon. Although she saw plaintiff primarily because of his chest discomfort, Dr. Justice also noted complaints of neck and back pain which, upon the basis of the history given by plaintiff, she related to the April 14 accident.
On August 9, 1978 plaintiff was involved in a motor vehicle accident in Lecompte when his car collided with a truck. Besides suffering a minor laceration to the forehead, plaintiff was found by Dr. Winters to have aggravated the injuries to his neck and back which were sustained in the April accident.
In September 1978 plaintiff requested that his employer send in a formal report on his April 1978 accident to its workmen's compensation insurance carrier. Upon the completion of its investigation, but without having received from plaintiff a detailed statement of expenses incurred in connection with the use of his truck on the job, defendant insurance company paid plaintiff $2210, representing workmen's compensation benefits at the maximum rate of $130 per week for the 17 week period running from the date of the April 1978 accident to the date of the second accident in August 1978. The position of the insurance company was that any present disability experienced by plaintiff was due to the second accident and that his disability resulting from the on-the-job accident terminated after 17 weeks.
Plaintiff did not return to work for his sister-in-law's timber company after the April 1978 on-the-job accident.
This suit for workmen's compensation benefits for total and permanent disability *1326 was filed on May 17, 1979. Trial on the merits was held on February 28, 1980. Judgment was rendered on November 18, 1980 and signed on June 10, 1981.
Causal Connection Between Disability and April 1978 Accident
Appellant concedes that plaintiff was involved in an on-the-job accident on April 14, 1978, but argues that any disability he suffers is due to a separate, intervening causethe August 1978 motor vehicle accident.
Prior to the April 1978 accident, plaintiff was afflicted with a variety of maladies common to those of advanced years whose livelihood has depended upon the performance of manual laborincluding a generalized arthritic back condition. However, it was undisputed that before the accident plaintiff worked regularly, free of significant pain and discomfort.
As pointed out in Lindsey v. H. A. Lott, Inc., 387 So.2d 1091 (La.1980):
"As in any other civil suit the plaintiff in a workmen's compensation action has the burden of establishing his disability and the causal relation between it and the accident by a preponderance of the evidence. This court has held, however, that a claimant's disability is presumed to have resulted from an accident if, before the accident, the injured person was in good health, the symptoms of the disabling condition appearing after the accident and manifesting themselves continuously afterwards, providing there is a reasonable possibility of causal connection between the accident and the disabling condition."
Furthermore, an employee's disability is compensable if a non-disabling pre-existing condition is activated or precipitated into disabling manifestations as a result of a work injury. Lucas v. Insurance Company of North America, 342 So.2d 591 (La. 1977).
There is no question but that plaintiff was disabled as a result of the April 1978 accident. Defendant recognized this fact by paying 17 weeks compensation benefits thereafter. Its argument that this condition had substantially subsided by the time of the August 1978 accident is not supported by the record and is directly refuted by the testimony of Dr. Winters who, queried on this point, simply stated that "the second accident didn't help anything" since the injuries were in the same areas of the body [as those sustained in the April 1978 accident]. Dr. Winters refused to speculate on whether the second accident either prolonged or made more permanent the injuries suffered by plaintiff in the on-the-job accident.
Since his conclusion is amply supported by the record, the trial judge was not clearly wrong in finding that plaintiff's on-the-job April 1978 accident was a substantial factor in causing his disability, although the August 1978 accident apparently aggravated his injuries or otherwise contributed to his disabling condition. See Byrer v. Southern Baptist Hospital, Inc., 350 So.2d 1233 (La.App. 4th Cir. 1977).
Extent of Plaintiff's Disability
After repeated examinations and months of treatment, it was Dr. Winters' conclusion that plaintiff's arthritis of the spine was aggravated by the trauma sustained in the April 1978 on-the-job accident. Based upon an examination of plaintiff just the day before the trial on the merits, Dr. Winters testified that plaintiff continued to experience "too much difficulty with his back and neck" to engage in any kind of work.
Plaintiff's testimony, corroborated by that of his wife, was that he had suffered persistent neck and back pain since the time of the April 1978 accident, and that he had to take pain pills on a regular basis at night for relief. He denied having engaged in any work since the date of that first accident.
A workmen's compensation claimant is totally and permanently disabled if he is unable to engage in any gainful occupation for wages. La.R.S. 23:1221(2).
Appellant argues that, if disabled at all by the April 1978 accident, plaintiff's disability is only partial since there was evidence that he had driven a pulpwood truck *1327 for several days on a wood-hauling job in Texas subsequent to the first accident.
Our review of the record reveals that the evidence relied upon by appellant consists of the rather vague deposition testimony of Phacker, the operator of a Texas wood yard, that he saw plaintiff on at least one occasion in June 1978 drive a truck loaded with wood into his yard. Even if accepted as true, this evidence alone would not serve to refute the categorical medical testimony that plaintiff was unable to engage in gainful employment because of injuries received in the on-the-job accident. Consequently, the trial judge correctly found that plaintiff was totally and permanently disabled for workmen's compensation purposes.
Computation of Weekly Compensation Benefits
We find merit in appellant's argument that plaintiff failed to prove entitlement to the maximum weekly compensation award of $130.
As previously stated, plaintiff used his own truck to haul wood for his timber company employer, for which he was paid $5.00 per cord of wood hauled. A truck load usually consisted of five cords and plaintiff routinely made four loads per day, working an average of five days each week. Plaintiff testified that the expense of running his truck (including gas, oil, etc.) averaged between $5 to $7 per load.
Pertinent to this issue is the following comment found in Malone & Johnson, Workers' Compensation, Sec. 327, pp. 102-104:
"The term `wages' means the amount earned by the employee through his own labor, rather than profits for his enterprising or rental for any equipment he may provide. Where an employee furnishes his own truck or other piece of equipment or provides his own helpers, an adjustment is ordinarily made in arriving at his wage so as to exclude those sums paid by the employer in remuneration for these items.
"Two methods have customarily been used by our courts in making this adjustment. Often the courts select the wage of another worker who was doing the same work on a wage basis. The other method is to select the full per unit price or the gross wage paid, from which is deducted the reasonable rental value of the equipment and the amount paid to helpers. Sometimes the latter method is impractical because of the venturous nature of the undertaking.
"Almost all of the recent cases involving calculations of the `wages' of an employee who supplies his own equipment or helpers have involved persons employed in the logging industry, in which it is common to pay persons per cord of wood delivered. Obviously, a person who supplies a truck, or saws, or other laborers whom he himself pays will be entitled to a higher per-cord price than a person who merely provides his labor to cut the wood. In these instances, the court has used one or the other of the methods described above to reach a fair wage figure."
After having been amended in 1968 and 1975, La.R.S. 23:1021(7) provides in pertinent part:
(7) "`Wages' means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows:

* * * * * *
(d) If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four; provided, however, that if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by four."
*1328 Although the cited statutory provision stipulates that a claimant's average weekly wage in a case of this nature is to be computed on the basis of his "gross earnings," we construe this to mean the claimant's return on labor only rather than on capital also. Consequently, this requires that we deduct the expense incurred by plaintiff in the use of the truck owned by him in his employment in order to determine his "gross earnings" from his labor as a truck driver.
We find that the computations relating to this question, set forth in appellant's brief and derived from evidence in the record, are substantially correct. Using those figures, we calculate the weekly compensation benefit to which plaintiff is entitled as follows:

 $1448.45 . . . total paid to plaintiff by
 his employer over 7 week
 period prior to accident
less 406.00 . . . expense involved in operating
 truck, hauling 58
 loads of Wood at $7 per
 load
 ________
 $1042.45 . . . gross earnings for plaintiff's
 labor, divided by
 the 30 working days, with
 that figure multiplied by
 4, results in an average
 weekly wage of $139;
 66 2/3% of the latter
 computes to $92.66 as
 the weekly compensation
 benefit to which plaintiff
 is entitled.

Appellant argues that it is entitled to a credit for the "overpayment" of compensation ($130 per week) during the 17 week period. This argument is without merit, since it is established that amounts paid in excess of compensation due cannot be credited as payment for future compensation. Allor v. Belden Corporation, 382 So.2d 206 (La.App. 3rd Cir. 1980), reversed in part on other grounds, 393 So.2d 1233 (La.1981).
Decree
For the reasons set forth, the judgment of the trial court is amended to reduce the weekly compensation benefits for the duration of plaintiff's disability from $130 to $92.66 and, as amended, is affirmed. Costs of appeal are divided equally between appellant and appellee.