YELVERTON, Judge.
In this workers compensation ease, Howard Latiolais seeks maximum benefits under LSA-R.S. 23:1221(2), based on the claim that his injury has put him in the odd lot category. The trial court concluded that the worker had not “made out a case under either the substantial pain or the odd lot doctrine”. From the dismissal of his suit, plaintiff appeals. We affirm.
Plaintiff was a motor vehicle mechanic in Eunice, Louisiana, for 33 years prior to his accident on April 15, 1978. For the last 26 of those years he worked for the same employer, Ashy Enterprises, Inc., the defendant, doing the same job. His job was general mechanical maintenance and repairs of his employer’s trucks.
On April 15, 1978, he fell off a bumper and suffered a spinal fracture of the lower third distal tibia and fibula (the lower bones) of the right leg. The treating physician, Dr. LaFleur of Eunice, a general surgeon, saw him the next day and hospitalized him for ten days. Due to the nature of the fracture, no open reduction or internal fixation was required. Treatment consisted of fitting with a long leg cast. At the time of the initial examination, it was discovered that plaintiff also had a peroneal nerve weakness, resulting from a compression or contusion of the motor nerve, a condition which often accompanies combined fractures of the lower leg bones. This nerve weakness manifested itself by plaintiff’s difficulty in moving his right great toe and right foot up.
A month and a half after the injury the long leg cast was replaced with a short cast which plaintiff wore for three months. Nerve testing was performed on November 17, 1978, and this showed that the damaged peroneal nerve was regenerating. Examination on April 10, 1979 revealed that the leg fractures had healed. The plaintiff still had some nerve weakness restricting his ability to dorsiflex his right foot. The plaintiff was noted to continue to have atrophic changes to the skin and muscles of the right lower leg. This condition was also improving. After this examination on April 10, 1979 Dr. LaFleur released Latio-lais to return to his previous employment with a 25% partial disability of the right foot. The doctor felt that this partial disability would not impair the plaintiffs ability to perform the work he had been doing.
Although medically released to return to work on April 10, 1979, plaintiff did not in fact return to his old job. The record does not reveal why, but the testimony was that he was neither asked to nor did he seek to return. There is some evidence he subsequently did vehicle repair work for pay for neighbors and friends. He also drew Social Security benefits. He also continued to draw maximum weekly workers compensation benefits of $139 a week from his former employer, Ashy.
On August 1, 1980 plaintiff went back to work but for a different employer, West End Radiator & Repair Shop of Eunice. A few days after plaintiff went back to work, defendant Ashy Enterprises, which was still paying the maximum rate of weekly benefits, offered to settle the workers compensation claim for $4,000, an offer which plaintiff indicated he would accept. De *1290 fendant then discontinued the payment of weekly benefits. Before the compromise could be completed, plaintiff changed his mind. Ashy then resumed the payment of weekly benefits, but at a reduced rate of $39 a week.
Plaintiff continued to work for West End Radiator & Repair Shop for eight months, quitting on April 4, 1981. At that job he was paid by the week at the rate of $107.60. Plaintiff performed much the same type of work he was doing for his employer when he was injured, that is, general repair work on vehicles. From time to time it was necessary for him to lift and carry radiators. According to his employer on this job, plaintiff did his work without noticeable difficulty. He quit unexpectedly. Plaintiff explained at trial that his reason for quitting was that his leg was bothering him and that he was tired due to his age. He felt he could no longer work full time. He was also having pain in his hip and ankle, taking aspirin frequently. He stated that he had lost considerable time at West End on account of his condition, once for two weeks straight. He felt that he could work three days a week, but his West End employer needed a man full time and was unable to accommodate him on a part time basis, so he quit entirely. His boss at West End during this eight month job, Gerald Fonten-ot, testified that he had no record and could not recall anything about plaintiff missing any significant time, but plaintiff did complain of having trouble with his leg “once in a while”.
Dr. LaFleur, the treating physician, last examined the plaintiff on January 23,1981, some two and a half years after the accident and ten months before trial. This examination took place while plaintiff was working for West End Radiator & Repair. At that time plaintiff complained that he “walked like a duck”. The doctor observed that plaintiff still had some lack of sensation over the dorsum of his foot and some difficulty with elevation of the right great toe. Latiolais indicated that he had improved ambulation and strength of his leg. The doctor observed that plaintiffs range of motion had improved, that the atrophy of the right leg had improved from three-quarters inch to one-fourth inch, and that he was ambulating well without assistance of ankle brace or support. He felt that the neurological defect in the foot would continue to improve and that the previous 25% partial disability to the foot could be reduced to 15%. Dr. LaFleur also stated that at the January 1981 examination plaintiff denied any pain and that the alternating hypersensitivity and insensitivity plaintiff was experiencing in his right forefoot indicated that the sensory nerve was returning to function. The plaintiff still had some swelling of the foot which could have caused discomfort. The doctor said that plaintiff could perform mechanic work on trucks and that he had only a ten percent partial disability of the body as a whole, and 20% total lower right extremity disability after January 23, 1981. There is nothing in Dr. LaFleur’s deposition (taken for trial purposes) or his attached letter reports that would indicate the doctor was aware, at the time of his examination on January 23, 1981, that Latiolais was then working full time for West End Radiator & Repair Shop as a mechanic.
Latiolais saw only one other doctor, and that was eight days before trial, on November 5, 1981, which was some three and a half years after the accident. This was Dr. Buller of Opelousas, another general surgeon. On this examination plaintiff stated that his right leg felt weak, but he denied any problems with swelling or severe pain. He did complain of loss of coordination. Dr. Buller observed that plaintiff walked with a widened gait and was unable to squat on the right side. There was also numbness on the dorsum of the right foot and an absent right ankle reflex. Dr. Bul-ler’s deposition was taken on November 9, 1981, just five days after the examination, for trial purposes. On direct examination it was his summation that total rehabilitation would be impossible because of plaintiff’s age. He also felt that the leg injury could cause plaintiff enough difficulty to make him unable to perform even less strenuous work than he had done prior to the acci *1291 dent. His reading of X rays of the leg around the fracture site and X rays of the foot revealed osteoporosis of the disuse type, meaning that this was objective evidence that the plaintiff was favoring, or not using his right leg in a normal way. It was his opinion that plaintiff would probably never return to work. Dr. Buller admitted that he was at a disadvantage in evaluating plaintiff’s condition because he had not followed plaintiff through the course of treatment.
It is apparent from a reading of Dr. Buller’s testimony that at the time of the examination on November 5, 1981, the doctor was not made aware of the fact that plaintiff had worked for approximately eight months since his injury for West End Radiator & Repair Shop in Eunice, doing basically the same type of work that he had done for his former employer, the work of a mechanic. When the doctor was cross-examined hypothetically concerning a successful return to work, the doctor stated that his opinion as to disability would be different if it was a fact that plaintiff had returned to substantially the same employment for several months.
Latiolais was 64 years old at the time of the accident. He is deaf in one ear and blind in one eye, the loss of the eye having occurred in the 1950s. The record does not reflect his education. His work experience is limited to that of a mechanic. His own testimony is conflicting as to whether he has sought employment since the accident other than at West End Radiator & Repair Shop. Once he said he had never tried to get work and on another occasion he said he had sought employment unsuccessfully. The evidence preponderates heavily against a finding of substantial pain. Plaintiff denied substantial pain to both doctors. His complaints were limited to weakness in the leg, and tiring, which he attributed in part to his age. About the only evidence of any degree of pain is the testimony of his wife who said that her husband was not a complainer, but she knew he was hurting because at home he took aspirin, sat on pillows and sometimes slept on the couch with his foot elevated.
This case went to trial with all issues stipulated except the single issue of whether plaintiff was totally and permanently disabled. Plaintiff attempted to make out a case based on the odd lot doctrine, emphasizing the factors of substantial pain and age. The trial judge concluded that plaintiff had not made out a case for classification into the odd lot category. In his written reasons for judgment, the trial court considered the credibility of the witnesses, as well as plaintiff’s post-accident work history.
Beginning with the case of Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980) the Supreme Court of Louisiana has allowed workers to obtain total permanent disability awards if they can establish that they belong to the odd lot classification. A definition of an odd lot worker is one who, though capable of doing some type work periodically, is so limited in what he can do that a reasonably stable market for his work does not exist. A claimant need not be absolutely helpless to qualify for total disability status. If he can prove that his injury and resulting physical condition, together with his mental capacity, his education, training, age, substantial pain, or other factors combine to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd lot category. Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); Augustine v. Courtney Construction Co., Inc., 405 So.2d 579 (La.App. 3 Cir.1981).
The determination of whether a plaintiff fits the odd lot classification is a fact question. Lemoine v. Marksville Industries, Inc., 391 So.2d 528 (La.App. 3 Cir. 1980). Factual determinations by a trial judge when based on his evaluation of credibility cannot be disturbed on review absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). This standard of review is applicable to workers compensation cases. Hollis v. Travelers Insurance Company, 368 So.2d 154 (La.App. 3 Cir. 1978).
*1292 After a careful review of the record, and a consideration of all of the factors apparent therein relative to a determination of whether plaintiff fits into the category of odd lot workers, we cannot say that the trial judge was clearly wrong in finding that plaintiff failed to make out a prima facie case and is therefore not permanently and totally disabled.
For the foregoing reasons, the judgment appealed from is affirmed. The costs of this appeal are assessed to appellant.
AFFIRMED.