CULPEPPER, Judge, Pro Tern.
In this worker’s compensation suit, defendants, Texas Road Gin and its insurer, Commercial Union, appeal a judgment granting plaintiff, Ernest Favorite, Sr., total and permanent disability benefits, penalties, and attorney’s fees.
The issues on appeal are: the extent of plaintiff’s disability, whether total and permanent or permanent partial under the Worker’s Compensation Law in effect on November 20, 1981, the date of the accident, and whether plaintiff is entitled to penalties and attorney’s fees?
*532 On November 20, 1981, plaintiff, while hauling cotton, was injured when the truck he was driving collided with an eighteen-wheeler. He sustained serious injuries including a depressed skull fracture which required surgery to remove and reconstruct bone fragments, hospitalizing him for thirteen days. A month later, plaintiff returned briefly to the hospital for observation and treatment of a stitch abscess.
In February, 1982 plaintiff was referred to Dr. White, an ENT specialist, after complaining of hearing loss and unsteadiness. Dr. White conducted several tests which revealed that plaintiff suffered from high frequency hearing loss in both ears and conductive hearing loss in his right ear. Dr. White concluded the former type of hearing loss was attributable to artillery fire which plaintiff was subjected to during the Korean War while the latter type of hearing loss was compatible with the head injuries he sustained in his accident. Conductive hearing loss results when all of the sound is not transmitted from the eardrum to the inner ear nerve.
On February 19, 1982 Dr. White performed surgery to remove adhesions which had developed in plaintiff’s right ear. Dr. White examined plaintiff in February and March, 1982 before releasing him to return to work on April 8, 1982. Unable to assess a percentage of hearing loss, Dr. White estimated that plaintiff could hear about half of the spoken word while missing the other half.
In May, 1982, Dr. Fresh, the neurosurgeon who treated plaintiff’s head injuries, discharged plaintiff even though he was still experiencing dizziness and a mild disturbance of his gait. Dr. Fresh allowed plaintiff to begin driving an automobile in preparation for returning to work as a school bus driver, a part-time job held by plaintiff in addition to his duties with Texas Road Gin. In May, 1983 plaintiff returned to Dr. Fresh complaining of hearing loss and a stagger in his walk. Dr. Fresh concluded plaintiff’s dizziness, a common occurrence with severe head injuries, was permanent although it was likely to diminish somewhat over time. After this examination, Dr. Fresh gave no opinion as to plaintiff’s ability to return to work.
Dizziness and hearing loss caused plaintiff to fail his school bus driving physical in July, 1982. The physical was administered by Dr. Killen, plaintiff's family physician. Dr. Killen examined plaintiff in August, 1982 and March, May, August, and October, 1983. Dr. Killen, noting plaintiff’s major problem stemmed from dizziness, opined that plaintiff should not return to driving a school bus because of the danger to the children. However, Dr. Killen stated several times that plaintiff was capable of performing many other types of work, including most of the work he was performing as a handyman at the gin.
The employer ceased paying compensation benefits in October, 1982. Suit was filed later that month. Plaintiff had not returned to work when the case was tried in December, 1983. He said dizziness and ringing in his ears caused him to stumble around as if he were “drunk.” He further testified that he only drove a car when necessary.
After reviewing the evidence, the trial court found plaintiff totally and permanently disabled because he was unemployable for the job which he was working at the time of the accident. The trial court awarded penalties and attorney’s fees for defendants’ arbitrary and capricious handling of plaintiff’s claim.
The initial issue presented for our review is whether the trial court erred in finding plaintiff totally and permanently disabled.
At the time of plaintiff’s accident, total disability was defined as the inability “to engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience_” [Emphasis added.] See LSA-R.S. 23:1221(1) and (2); Du- *533 sang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980).
Partial disability, as defined in § 1221(3) is disability “to perform the duties in which he was customarily engaged when injured or duties of the same or similar character ... for which he was fitted by education, training, and experience.” [Emphasis added.] See Lattin v. Hica Corp., 395 So.2d 690 (La.1981); Daly v. L.E. Myers Const. Co., 419 So.2d 512 (La.App.2d Cir.1982); and Marine v. Cornwall Equities, Ltd., 472 So.2d 70 (La.App. 4th Cir.1985), writ denied, 477 So.2d 104 (La.1985).
We conclude the trial court was clearly wrong in finding plaintiff totally and permanently disabled “to engage in any gainful occupation for wages.” No medical opinion states this. On the contrary, all those physicians, including Dr. Killen, stated plaintiff could perform work for wages. Dr. White even said plaintiff could perform all of his duties as a handyman at the gin.
A respectable argument can be made that plaintiff is entitled only to benefits for loss of a bodily function, that is, partial loss of hearing in one ear (the right ear), under § 1221(4)(p). However, giving plaintiff every benefit of the doubt as we must in reversing the trial court, we conclude plaintiff could not return to all of the duties of the employment in which he was engaged at the time of the accident. Thus, plaintiff is entitled to benefits for his partial permanent disability under § 1221(3).
Under this section, plaintiff is entitled to 66-%rds of the difference between the weekly wages he was earning at the time of injury and any lesser weekly wages which he may actually earn during the period of his disability, not beyond a maximum of 450 weeks and subject to the credits allowed by law.
PENALTIES AND ATTORNEY’S FEES
Defendants argue their termination of plaintiff’s compensation benefits on October 15, 1982 was not arbitrary, capricious, or without probable cause. We agree.
LSA-R.S. 23:1201.2 providing for penalties and attorney’s fees for wrongful termination of worker’s compensation benefits is penal in nature and must be strictly construed; termination of benefits will not be held to have been arbitrary or capricious where an insurance carrier bases its decision to terminate on competent medical evidence. Holland v. T.G. & Y. Stores, 451 So.2d 1317 (La.App. 1st Cir.1984).
The medical information available to defendants when benefits were discontinued indicated that plaintiff could return to work. Dr. White released plaintiff to return to work on April 8, 1982. In May, 1982 Dr. Fresh discharged plaintiff in order to allow him to begin driving an automobile in preparation for returning to work as a school bus driver. Based upon this medical evidence, we hold the trial court was clearly wrong in finding defendants’ decision to discontinue plaintiffs benefits was arbitrary and without probable cause. Accordingly, we reverse the award of penalties and attorney’s fees.
DECREE
We amend the judgment of the trial court to award plaintiff 66-%rds of the difference between the wages he was earning at the time of injury and any lesser wages he may actually earn thereafter, limited to a maximum of $110.42 per week for a period of 450 weeks from the date of injury, subject to credits the law allows, including the number of weeks during which compensation has been paid, with legal interest on each weekly benefit from the date it became due.
All costs of this appeal are assessed against defendants.
AMENDED AND AS AMENDED AFFIRMED.