492 So.2d 514 (1986)
Mitchell PRICE, Plaintiff-Appellee,
v.
FIREMAN'S FUND INSURANCE COMPANY, et al., Defendants-Appellants.
No. 85-58.
Court of Appeal of Louisiana, Third Circuit.
July 21, 1986.
Rehearing Denied August 13, 1986.
Writ Granted November 7, 1986.
*515 Bolen and Erwin, Ltd., Charles H. Munsterman, Alexandria, for defendants-appellants.
Charles A. Riddle, III, Marksville, for plaintiff-appellee.
Before DOMENGEAUX, J., and BABINEAUX and TEEKELL, JJ. Pro Tem.[*]
LLOYD G. TEEKELL, Judge Pro Tem.
This is a workmen's compensation case wherein plaintiff alleges an injury sustained on August 17, 1983, while employed by Alton Lachney d/b/a Alton Lachney Masonry, as a brick layer's assistant. Defendant Fireman's Fund paid weekly workmen's compensation benefits from the date of the accident through February 29, 1984, along with all appropriate medical expenses incurred up to that date.
On October 22, 1984, the district court rendered judgment finding plaintiff to be totally and permanently disabled and awarding compensation benefits in the amount of $160.00 per week from August 17, 1983, and continuing during the entire disability period, together with legal interest on each installment from the due date until paid, plus all medical travel expenses up to the statutory limit with a credit for all sums previously paid.
Defendants filed a timely appeal, and urge assignment of errors as follows: (1) the trial court erred in holding that the plaintiff, Mitchell Price, was totally and permanently disabled, (2) trial court erred in holding that plaintiff's weekly workmen's compensation benefit rate is $160.00 per week and not $96.00 per week, and (3) the trial court erred in allowing the payment of medical bills that were for evaluation of Doctors Razza and McMain.
Plaintiff is a man 27-years of age, whose duties while working as a brick layer's assistant for Alton Lachney included making cement mortar, obtaining bricks for brick layers, tearing down scaffolds, moving scaffolds to other areas, etc. He stepped back and fell from a scaffold several feet to the ground below. One of his co-employees drove him from Baton Rouge to Marksville to see a physician. He entered Marksville General Hospital and was treated by Doctor Fernando Garcia. He was discharged three days later, after having received treatment for multiple nondisplaced rib fractures, a mild hematoma of the scalp, tenderness along the left clavicle, and small pneumothorax, which is a small amount of air escaping out of the lung into the chest cavity, estimated to consist of about 10 to 15% of normal volume of lung.
Doctor Garcia's testimony was generally to the effect that all of plaintiff's injuries were treated conservatively, that is, they were more or less permitted to heal on their own. Although plaintiff did not return for follow-up visitation, Dr. Garcia testified that he considered plaintiff's injuries to be such as to render him disabled to return to work for a period of six weeks.
On August 29, 1983, plaintiff consulted Doctor Edmond Kalifey, who diagnosed plaintiff's injuries as sore ribs from multiple fractures, difficulty breathing because of the pneumothorax problem, along with tenderness in the area of the collarbone (thoracic), where the clavicle bone joins the breast bone.
Doctor Kalifey also saw the plaintiff on September 6 and 28, October 17, November 8, and November 28 of 1983. On the occasion of the November 28th visit, plaintiff advised Doctor Kalifey that a few days prior to that time he had lifted a TV set, *516 and complained of discomfort in the area of his back. Although x-rays and other examination did not reveal any objective evidence of back discomfort, he was treated conservatively, being seen by Doctor Kalifey again on December 13,1984, January 2, and 23, and February 2, 1985, at which time he was released from any further treatment.
Doctor Kalifey testified that the ribs could cause some tenderness and may hurt plaintiff up to possibly six months following the date of injury. While Doctor Kalifey's testimony was not very definitive along this particular line, it would be fair to interpret him as indicating that the plaintiff was probably unable to return to work for the six months period because of the tenderness and soreness of his ribs.
Although Doctor Kalifey could not objectively confirm an injury to the back, he did say plaintiff indicated to him that he had some discomfort in the back before he lifted the TV set, but that it had become worse since he lifted the TV set. Doctor Kalifey also indicated that if plaintiff had a back injury, that such injury was more likely due to the trauma of the fall rather than from picking up the TV set.
On February 28, 1984, plaintiff's attorney sent him to see Doctor F.C. McMain, an orthopedic specialist in Baton Rouge, Louisiana. Doctor McMain indicated he found a subluxation of the left sternoclavicular, but could not confirm any back pain based on any objective clinical findings, and that he thought in February, the plaintiff could probably return to work, although he did find a 5% impairment of the upper left arm area, but that this should not prevent plaintiff from returning to regular work.
Doctor McMain indicated that "I don't think this man has got a herniation in the lumbar disk", and that he could find no orthopedic evidence of nerve root impingement, indicating CAT Scan would help confirm a diagnosis along these lines, but "I would be very surprised if it showed anything but I don't know" ... "because of his lack of objective findings in association with his severe complaints".
On September 5, 1984, plaintiff's attorney had him examined by Doctor Bruce Razza, an orthopedic doctor in New Orleans, Louisiana. Doctor Razza found some small mild facet subluxation, impressions of post-traumatic arthritis of the left sternovicular joint, and possible lumbar facet syndrome (lower facet subluxation) probably caused by the accident.
Doctor Razza indicated that the plaintiff was disabled as of that time.
On cross examination, Doctor Razza admitted that there were no objective findings of pain, no drop reflex, or a drop foot, or markedly positive straight leg raising test, etc. That his findings were simply based on representations of pain and discomfort made to him by the plaintiff.
Doctor Razza did testify that plaintiff's complaints were many and seemed to "make sense", but there were no neurologic deficits, except mile crepetance of the sternoclavicular joint.
Doctor Razza reviewed no prior medical reports or x-rays, and simply based his "findings" on subjective complaints, not buttressed or supported by any objective evidence. Doctor Razza did indicate that a facet block test would confirm such a diagnosis, but no such tests were conducted in this case. The doctor did indicate that the lumbar facet syndrome, if such exists, may be caused by trauma or may be congenital.
Doctor Razza finally testified as follows:
Q: Doctor Razza, your assumption that the lumbar facet syndrome is related to the accident of August, 1983, is based on the fact that Mr. Price related to you that his pain began immediately after the fallis that right?
A: Yes, shortly thereafter, right.
Q: If in fact his back pain didn't start until some months later, three to four months later, your opinion would change, would it not?
A: Yeah, if the patient indicated that he didn't have problems for a three month period and then it began, well it would be less likely related. What he reported to me *517 that he had back pain even during his hospital stay, when he was getting treatment for his rib fractures and pneumothorax.
Q: And Doctor as I understand it the pneumothorax has healed, the clavicle has healedthere is just some give and take in that area. Is that right?
A: Yes, of the joint adjacent to clavicle, yes, mam.
The long and short of Doctor Razza's testimony is that he simply speculates that the plaintiff has a disability based solely on the subjective complaints of the plaintiff, not supported by objective evidence.
In summary, both of the plaintiff's initial treating physicians say that he has recovered from any injuries sustained as a result of the work related fall. This diagnosis is essentially supported by Doctor F.C. McMain, an orthopedic specialist who saw the plaintiff at the request of his lawyer. The highly speculative findings of Doctor Razza are simply not convincing.
Since this injury occurred on August 17, 1983, it comes within the purview of Louisiana Revised Statutes, Title 23, as amended in 1983. Section 1221(2)(a) thereof defines permanent total disability as:
"Inability to engage in any gainful occupation for wages, whether or not the same or similar occupation as that in which the employee was customary engaged when injured and whether or not an occupation for which the employee, at the time of the injury, was particularly fitted by reason of education, training and experience."
The plaintiff has the burden of proof, which means that his claim must be substantiated by "clear and convincing evidence". See The Anatomy of Proof in Civil Actions, 28 Louisiana Law Review 297, 304 (1968); Hall v. Arkla Gas Co., 368 So.2d 984 (La.1979).
The evidence indicates that at 27-years of age the plaintiff has engaged in a number of working pursuits. He has operated several different types of equipment, including tractors, dozers, motorgraders, scrapers, and dump trucks. He has also worked as a grass cutter, off-shore at chipping and painting on boats, as well as some work as a marble setter.
The plaintiff simply has not sustained the burden of proof that he is disabled from performing any reasonable type of work. The primary purpose of the workmen's compensation law is to "provide payment for loss of earnings because of a disability and not to provide payments for the injury which cause the disability or for resulting pain and suffering." Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980).
In this case, the plaintiff was paid workmen's compensation benefits due him during any reasonable period of disability, and he is not entitled to further benefits.
In view of our decision with respect to Assignment of Error Number 1, there is no necessity for us to address the remaining two assignments of errors.
For the above and foregoing reasons, the decision of the trial court is reversed, at Plaintiff-Appellee's costs, at trial and on appeal.
REVERSED AND RENDERED.
NOTES
[*] Judge Allen M. Babineaux of the Fifteenth Judicial District Court and Judge Lloyd G. Teekell of the Ninth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.