503 So.2d 689 (1987)
Leon CAPTAIN, Sr., Plaintiff-Appellee,
v.
SONNIER TIMBER CO., et al., Defendants-Appellants.
No. 86-284.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1987.
Hall, Lestage and Landreneau, H.O. Lestage, III, Deridder, for defendants-appellants.
Ryder and Deshotels, Alfred Ray Ryder, Oberlin, for plaintiff-appellee.
Before GUIDRY, STOKER and LABORDE, JJ.
*690 STOKER, Judge.
Sonnier Timber Company appeals a judgment awarding worker's compensation benefits to Leon Captain for total and permanent disability.

FACTS
Sonnier Timber contracted with Leon Captain for the hauling of timber in Allen Parish. On March 20, 1984, while engaged in that work, Captain slipped as he stepped off a tractor, and injured his leg. Sonnier Timber paid Captain's wages and medical expenses through October 15, 1984, when Captain's doctor discharged him. When the company discontinued payments, Captain filed a claim with the Office of Worker's Compensation. Captain subsequently filed suit in the district court against Sonnier Timber and Pacific Marine Insurance Company, its worker's compensation insurer, attaching a copy of the certificate issued by the Office of Worker's Compensation, as required by LSA-R.S. 23:1311(C).
The trial court found that Captain was totally and permanently disabled as a result of the accident, and awarded him weekly benefits of $131.40. He also held that Captain's earnings from a part-time job, which he held before the accident and continued afterward, would not alter his compensation rate. Sonnier Timber appeals.

EVIDENCE AND FINDINGS OF FACT
Leon Captain was the 54-year-old owner of his own pulpwood service. He owned two trucks and had three employees. Sonnier Timber financed his trucks and equipment. Sonnier Timber had hired him on the day of the accident to haul pulpwood. Captain also held a second job as a deputy sheriff, a position he continued to hold after the accident.
Captain sustained a fracture of the distal third of his left fibula and a severely sprained ankle. The fracture healed without complications, but the sprain has caused continuing problems. Captain was treated by Dr. James Lowry from April 23 to June 26, 1984. Captain's ankle continued to swell and cause pain, so Lowry referred him to an orthopedist. As of June 26, 1984 Lowry felt that Captain was unable to work in the woods because of the injury to his ankle.
From June 28 to October 11, 1984 Captain saw Dr. Edmond Campbell. Three letters were admitted into evidence in which Dr. Campbell capsulizes his conclusions concerning Captain. On July 2 he wrote that the fracture had healed, but that pain, swelling and instability of the leg prevented Captain's return to work. The next letter, dated September 17, revealed that Captain was injected with an anti-inflammatory drug in July, but complained of soreness in August. The swelling had decreased by August 27, 1984, and Campbell projected that Captain could return to work about November 1.
Captain did attempt to return to work, but his ankle began to swell again. After that, he would go out into the woods with his employees as a supervisor, hiring another man to take his place as a worker. However, after January 1985 he completely discontinued his operation because he claims he cannot make money if he cannot do the work himself.
In Dr. Campbell's last letter, dated October 23, 1984, he states that:
"The patient was discharged from further observation on 10-11-84. I feel that the fracture of the distal shaft of the fibula is healed. I feel that he has a permanent partial impairment approximating 20% of the left foot and ankle due to some arthritic changes in the ankle. This would amount to 16% of the entire extremity. I cannot state that he can perform all of his duties of working in the woods, on foot and cutting timber. I feel that he could operate a tractor or a truck. I am not certain that the patient agrees with this opinion. I do not feel that anything is to be gained by further treatment or observation."
The trial judge stated "[f]rom the testimony of Dr. Lowry and reports of Dr. Campbell, this Court is of the opinion that Plaintiff is totally and permanently disabled as a result of the accident he sustained *691 while employed by Defendant, Sonnier Timber Company." He also stated "the opinion of Dr. Edmond Campbell that Plaintiff could not perform all of his duties as a pulpwood hauler is clear, and for this reason the Court finds that he is totally and permanently disabled from performing his duties as a pulpwood hauler."
The trial judge felt that because the part-time job existed prior to the accident and continued after the accident, the job did not enter into the calculation of Captain's compensation rate. He awarded Captain weekly benefits of $131.40.

ISSUES ON APPEAL
There is no dispute as to employment or the occurrence of the accident. The questions are:
1. Is Captain totally or partially disabled, under the new (1983) definition in LSA-R.S. 23:1221?
2. If not, is he entitled to supplemental earnings benefits? More particularly, is he capable of earning 90% of his pre-injury wages?

TOTAL PERMANENT DISABILITY
LSA-R.S. 23:1221(2)(a) allows benefits where the injury produces permanent total disability to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not he was fitted to it. Subparagraph (2)(b) disallows benefits where the employee is engaged in any employment or self-employment, regardless of its nature or character, including odd-lot or sheltered employment or working in pain. The claimant who is not working must show by clear and convincing evidence that he is physically unable to engage in any employment or self-employment. LSA-R.S. 23:1221(2)(c).
The trial judge found that Captain had shown that he could not perform all of his duties as a pulpwood hauler, and this qualified him for benefits under LSA-R.S. 23:1221(2). He opined that a literal interpretation of the 1983 amendments to the worker's compensation law would be "much too severe." Thus, he essentially applied the pre-1983 standard of total permanent disability to his findings.
We believe the trial judge erred in finding Captain totally and permanently disabled under the new law. Under the clear wording of the statute, and according to all authority available to us, a worker who holds any job after his injury is ineligible for benefits for total permanent disability. See Johnson, Bound in Shallows & Miseries: The 1983 Amendments to the Workers' Compensation Statute, 44 La. L.R. 669 (1984); W. Malone & A. Johnson, Louisiana Workers' Compensation Law & Practice, Secs. 271-77 in 13 Louisiana Civil Law Treatise 83-117 (2d ed. Supp.1986). The few cases that have dealt with the issue indicate that the language of the statute will be interpreted literally. See Price v. Fireman's Fund Ins. Co., 492 So.2d 514 (La.App. 3d Cir.1986), writ granted, 496 So.2d 338 (La.1986); Gaspard v. St. Paul Fire & Marine Ins. Co., 483 So.2d 1037 (La.App. 3d Cir.1985).
Since the trial judge found that Captain's inability to perform some of his prior duties entitled him to total permanent disability benefits, he was not required to determine whether the injury forced him to shut down his pulpwood operation. The evidence does not convince us that Captain was unable to continue his business. He continued to receive payments from Sonnier Timber through January 1985, some ten months after the accident. The exhibits listing payments Captain received from Sonnier Timber contradict his testimony that he quit his hauling operation because he "had to be with [his] crew to make any money." His post-injury gross earnings at least equal the pre-injury payments on a week-to-week basis. For this reason, we cannot attribute the termination of Captain's pulpwood hauling business to his injury.
In any case, Captain is ineligible for total permanent disability benefits because he is in fact working. Under the statute, any employment defeats a claim under this section. Captain's continued employment *692 as a deputy sheriff disqualifies him from benefits for total permanent disability.

PERMANENT PARTIAL DISABILITY
The 1983 amendments to the worker's compensation law changed the provisions covering permanent partial disability. The new act still provides what was formerly referred to as "schedule benefits" under the old law; these benefits are now denominated under the heading of permanent partial disability. However, these benefits are limited by LSA-R.S. 23:1221(4)(q), which at the time of this accident stated:
"(q) No benefits shall be awarded or payable in this Paragraph unless anatomical loss of use or amputation, as provided in Subparagraphs (a) through (o) of this Paragraph or loss of physical function as provided in Subparagraph (p) of this Paragraph is greater than fifty percent as established in the American Medical Association Guides to the Evaluation of Permanent Impairment, copyright 1977, by the American Medical Association."
Since the degree of impairment will be determined by medical experts, and since the statute dictates the effect of that determination on the benefits available to a claimant, legal evaluation of disability under this paragraph is foreclosed.
Dr. Campbell assigned impairment values of 20% of the foot and ankle, or 16% of the left leg. Since the statute stated that permanent partial disability benefits shall not be awarded for an impairment of less than 50%, Captain is not entitled to recover under this paragraph. (We note that the harshness of this provision has been ameliorated by a reduction of this threshhold from 50% to 25%. 1985 La. Acts No. 926.)

SUPPLEMENTAL EARNINGS BENEFITS
LSA-R.S. 23:1221(3)(a) provides:
"For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment ..."
As we stated above, Captain has failed to prove that he is unable to continue his hauling operation because of his injury. The only loss he has demonstrated is the wage he paid the extra worker who took his place. This wage was paid on the basis of $3.00 per cord of wood cut. The record indicates that his gross earnings after the accident actually exceeded his pre-injury gross earnings, even taking the extra expense into consideration. For the eleven weeks prior to plaintiff's accident his gross earnings totaled $3,568.26; for the eleven weeks after the accident plaintiff's gross earnings totaled $6,731.23. The extra worker hired to cut in plaintiff's place was paid for cutting 202.01 cords of wood, which at $3.00 per cord equaled $606.03. Subtracting this wage from the gross earnings earned by plaintiff after the accident yields a figure of $6,125.20. After the running of the post-accident eleven weeks, plaintiff's gross earnings did ultimately slack off until he quit wood cutting and hauling altogether.
On the basis of the facts just recited, Captain has failed to make the showing, as provided by subparagraph (a) of LSA-R.S. 23:1221(3), that he was unable to earn ninety percent or more of his pre-injury wages during the eleven-week period post-accident. However, the record contains little or no evidence concerning Captain's entitlement to supplemental earnings benefits after the eleven-week period.
Subparagraph (b) states a proviso relative to the term "wages the employee is able to earn in any month," which term is found in subparagraph (a). That wage "shall in no case be less than the sums actually received by the employee." (Emphasis supplied.) Moreover, sums actually received shall include, but not be limited to, "earnings from odd-lot employment, sheltered employment, and employment while working in any pain."
*693 Immediately following subparagraph (b) the statute contains significant qualifications of subparagraphs (a) and (b) which are contained in a subparagraph (c) in two further subparagraphs as follows:
"(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.
"(ii) For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee can not * perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment."
Subparagraph (b) is keyed to "sums actually received by the employee." Subparagraph (c)(i) is keyed to the situation where the employee is not working, or (in the words of the statute) "is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph," or "is earning wages less than the employee is able to earn." Subparagraph (c)(ii) is keyed to the situation in which the employee can only work in pain, and should that be the case, such employment is not counted. As the statute puts it, "the employee shall be deemed incapable of performing such employment."
Leon Captain, Sr. testified that working in the field resulted in swelling and pain in his ankle. However, Captain does not urge work-caused-pain in support of his claim for total disability. He relies solely on his physical inability to do the work of a pulpwood worker and his claim that it was not profitable for him to operate as a hauler only, that is, without working alongside his crew as a pulpwood worker. This contention is belied by the record of his earnings for the months following his accident and return to pulpwood operations. Nevertheless, assuming that Captain could continue to conduct his pulpwood operations profitably, we must consider the effect and application to this case of subparagraph (c)(i).
For whatever reason, Captain was not hauling wood for Sonnier Timber Company at the time of trial. Assuming, however, that he was able to haul and earn as much as he did during the eleven-week period post-accident, then his earnings as a deputy sheriff alone would be "less than the employee is able to earn." Under these circumstances, subparagraph (c)(i) comes into play. We must focus on the following language from the subparagraph:
"[T]he amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region."
Who bears the burden of establishing either condition (1) or (2) set forth in the portion of the statute quoted above?
With reference to working in pain, subparagraph (c)(ii) itself places the burden squarely on the employee to establish the facts "by clear and convincing evidence *694 unaided by any presumption of disability." On the other hand, under subparagraph (c)(i) it would hardly seem logical that the employee would bear the burden of proof to show that the "employment or self-employment" which he is able to perform was either (1) "offered or tendered by the employer or any other employer," or was (2) "proven available to the employee in the employee's or employer's community or reasonable geographic area."
We hold that, before an employee such as Captain may be excluded from receiving supplemental earnings benefits under LSA-R.S. 23:1221(3)(a), the employer must establish the elements set forth in subparagraph (c)(i). Apparently because the statutory provisions in question are so new in concept and, as far as we know, have been given little if any interpretation or application, the trial court gave no consideration to the question of supplemental earnings benefits. Indeed, under its decision, it would not have to do so. In the interest of justice we deem it appropriate to remand this case to the trial court for reopening of the case and a reconsideration of the possibility that plaintiff is entitled to supplemental earnings benefits in some amount. At the new trial, to be conducted consistent with the views expressed in this opinion, both parties may present evidence on the issue of entitlement or not to supplemental earnings benefits.

DISPOSITION
For the foregoing reasons, we reverse the judgment of the trial court insofar as it awarded Leon Captain, Sr. benefits under the worker's compensation law for total and permanent disability. We remand this case to the trial court for a new trial to determine whether plaintiff is entitled to supplemental earnings benefits, such determination to be consistent with the views expressed in this opinion.
Assessment of costs at the trial level are to await the conclusion of the new trial and are to be assessed by the trial court.
The costs of this appeal are assessed equally to appellants and appellee.
REVERSED AND REMANDED. * Changed in 1985 to read "cannot."