566 So.2d 106 (1990)
Otha FRANCE, Plaintiff-Appellee,
v.
A & M WOOD COMPANY and Georgia Casualty & Surety Company, Defendants-Appellants.
No. 21499-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 1990.
*107 Dawkins, Coyle & Carter by Michael S. Coyle, Ruston, for defendants-appellants.
Brittain, Williams, McGlathery, Passman & Sylvester by Russell L. Sylvester and Lala B. Sylvester, Nachitoches, for plaintiff-appellee.
Before MARVIN, SEXTON and HIGHTOWER, JJ.
*108 SEXTON, Judge.
Defendants bring this appeal from the district court's judgment which was favorable to the plaintiff, arguing several bases for reversal or modification of that judgment. We amend and affirm.
Plaintiff was an independent pulpwood contractor working for defendant A & M Wood Company (A & M). Defendant Georgia Casualty and Surety Company (Georgia Casualty) was A & M's workers' compensation carrier.
On January 20, 1984, plaintiff injured his back when he fell backward as he attempted to pick up one piece of wood while standing on another piece of wood. He experienced pain at the time but did not initially perceive the problem to be serious.
The next morning, plaintiff awoke in pain and had difficulty moving. He went to the Bossier Medical Center, where physicians could find nothing wrong. He thereafter went to another doctor who checked him into Lincoln General Hospital for evaluation.
Plaintiff was referred to Dr. W.W. Fox, an orthopedic surgeon in Shreveport, for specialized treatment. A CT Scan and myelogram disclosed a "granular bulge" at L4 and at L5 with evidence of disc material in the exit canal on the left foramen. However, during a subsequent surgery, Dr. Fox had a "negative exploration." In other words, the surgery disclosed that the myelogram had produced a false positive result. During this surgery, Dr. Fox also made more room for the nerve roots in an effort to relieve the plaintiff's symptoms.
Following surgery, plaintiff continued to have subjective complaints of pain, though Dr. Fox failed to find many objective findings to support plaintiff's complaints. Eventually, Dr. Fox, in consultation with Dr. Beach,[1] decided to perform a disc fusion because of plaintiff's continued complaints and because there had been an objective finding of disc narrowing at the L5-S1 space. The disc between L4 and L5 was removed because Dr. Fox found that it was beginning to deteriorate, and the disc between L5 and S1 was removed because it was already narrowing and its removal would facilitate the fusion of the neighboring vertebrae.
After recovering from the surgery, plaintiff experienced limited range of motion and lives with pain such that he cannot sleep without medication. In Dr. Fox's opinion, plaintiff is totally and permanently disabled from any gainful employment because of his lack of education and training and because plaintiff was a life-long common laborer and was now incapable of doing any type of labor. He further noted that plaintiff's condition would prevent him from any occupation which required prolonged standing or sitting because those two postures are hard on one's back. Plaintiff's condition is such that he cannot do any heavy lifting whatsoever and will "pay the price" for doing simple lifting. The doctor concluded his analysis by noting that plaintiff requires medication "just to live" and doubted that plaintiff could be put on a job where he would have to stay there several hours at a time. He would not recommend plaintiff as a candidate for rehabilitation.
Plaintiff filed suit against A & M and Georgia Casualty after the recommendation of the Office of Workers' Compensation was rejected by one of the parties. Plaintiff sought the maximum rate of compensation for total and permanent disability, interest on amounts alleged to be past due, payment of all medical and travel expenses, as well as penalties and attorney fees for defendants' alleged arbitrary and capricious failure to pay all benefits to which he was entitled. Plaintiff also sought other relief which is not at issue in this appeal.
Following a bench trial, the district court ruled in favor of the plaintiff, finding that he is totally and permanently disabled, that he is entitled to be paid the maximum rate of compensation, that he is entitled to be *109 paid travel expenses for his trips to the orthopedic surgeon and to the pharmacy, that he is entitled to a statutory penalty of twelve percent interest on all past due compensation, that he is entitled to $7000 in attorney fees, and other relief which is not relevant for purposes of this appeal.
Defendants now appeal, arguing that the district court was in error in these regards. Plaintiff has filed an answer to defendants' appeal, seeking an increase in attorney fees for those legal services necessitated by this appeal.

DISABILITY
In their first assignment of error, defendants argue that the district court erred in concluding that plaintiff is totally and permanently disabled and argue that, at most, plaintiff is entitled to supplemental earnings benefits. Plaintiff argues that the result reached by the district court is not manifestly erroneous and that it is supported by the record before this court.
The definition of total and permanent disability is found in LSA-R.S. 23:1221(2). At the time of plaintiff's injury, January 20, 1984, the version of that statute in effect was as follows:
§ 1221. Temporary total disability; permanent total disability; supplemental earnings benefits; permanent partial disability; schedule of payments
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
. . . .
(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (2)(a) of this Paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
(d) Notwithstanding any judgment or determination that an employee is permanently and totally disabled, if such employee subsequently has or receives any earnings, including, but not limited to, earnings from odd-lot employment, sheltered employment, or employment while working in any pain, such employee shall not receive benefits pursuant to this Paragraph, but may receive benefits computed pursuant to Paragraph (3) of this Section, if applicable.
(e) The issue of permanent total disability provided herein shall not be adjudicated or determined while the employee is engaged in employment pursuant to R.S. 23:1226(G), but such employment shall not prevent adjudication or determination of the employee's right to any other benefits otherwise provided in this Chapter; however, the employee shall not by virtue of employment pursuant to *110 R.S. 23:1226(G) be deprived of the right to determination or adjudication of permanent total disability herein at a time when he is not engaged in such employment.
. . . .
Defendants argue that plaintiff failed to meet his burden of proving his alleged permanent and total disability by "clear and convincing evidence" as required by LSA-R.S. 23:1221(2)(c). Defendants point out, "[a]s noted by a leading authority on Louisiana workers' compensation legislation and jurisprudence, H. Alston Johnson, III, the effect of this amendment `will make awards for total and permanent disability almost non-existant.' Louisiana Civil Law Treatise, Worker's Compensation Law and Practice, Malone & Johnson, § 276.5." Specifically, they argue that plaintiff failed to prove that he could not perform any labor whatsoever and that the district court mistakenly found plaintiff to be totally and permanently disabled when he is really what was characterized as an "odd lot" employee prior to the amendments to the Workers' Compensation Act by the legislature in 1983.
The manifest error rule is applicable to review of workers' compensation cases and the trial court's factual findings of work-related disability will not be disturbed where there is evidence before the trier of fact which, upon the latter's reasonable evaluation of credibility, furnishes a reasonable factual basis for those findings unless they are shown to be clearly wrong. The trial court's factual findings as to disability is the court's function to be determined by the weight of the evidence accorded by the court. The credibility assigned by the trial court to testimony and other evidentiary matters in a workers' compensation case must be given great weight upon review. Stewart v. Ormond Country Club, 542 So.2d 658, 659-60 (La. App. 5th Cir.1989), writ denied, 544 So.2d 408 (La.1989). The manifest error standard of appellate review applies equally when the evidence before the trier of fact includes written reports, records, and depositions. Virgil v. American Guarantee and Liability Insurance Co., 507 So.2d 825 (La.1987), on remand, 512 So.2d 1235 (La.App. 5th Cir.1987), cause remanded, 514 So.2d 1169 (La.1987), on remand, 520 So.2d 1259 (La.App. 5th Cir.1988), writ denied, 522 So.2d 569 (La.1988).
At the conclusion of trial, for reasons orally assigned, the district court concluded that the plaintiff was totally and permanently disabled. The court found that Dr. Fox's testimony "so indicates" and that the doctor's opinion was corroborated by the lay testimony. The court noted that the plaintiff was incapable of doing most of the things he could previously do, those same things he would have to be able to do to be gainfully employed, such as standing or sitting for any length of time, lifting, or moving about with any type of diligence. Finally, the district court found plaintiff to be, as a result of his age and background, incapable of vocational rehabilitation.
At the time of his injury, plaintiff was a 49-year-old manual laborer with a sixth grade education. He is able to read and write "a little." As a result of his injury, plaintiff is unable to remain sitting or standing for very long, should not lift anything substantial, has to change his physical position frequently, and has to take medication every day simply, according to Dr. Fox, "to live." Dr. Fox opined that it would be a waste of time and effort to attempt rehabilitation with the plaintiff because his disability had become ingrained.
The significant legal question presented is whether the medical testimony of Dr. Fox as corroborated by the lay testimony amounts to proof by clear and convincing evidence that this plaintiff is physically unable to engage in any employment or self-employment within the purview of LSA-R.S. 23:1221(2)(c). The evidence in the case consists of the very strong testimony of Dr. Fox that the plaintiff is permanently disabled from doing any work whatsoever. This testimony is corroborated by the plaintiff's wife and daughter as well as two neighbors. While these lay witnesses are not disinterested witnesses, cross-examination did nothing to dispel their testimony in any other respect.
*111 We thus conclude that while a close question is presented, we cannot say that the district court's conclusion that the plaintiff proved by clear and convincing evidence that he is totally and permanently disabled is clearly wrong on this record. In so concluding, we accept defendants' suggestion that clear and convincing evidence is appropriately characterized as a degree of evidence greater than a preponderance of the evidence but less than beyond a reasonable doubt. Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976).
Defendants also argue that plaintiff is not totally and permanently disabled because per LSA-R.S. 23:1221(2)(d), he has received "earnings" subsequent to his injury. The evidence established that, following his injury, plaintiff received money from his former work crew for the use of his trucks and equipment. The plaintiff rented his trucks until some point in 1987 and received up to $60 a week.
Defendants argue that this case is analogous to Captain v. Sonnier Timber Company, 503 So.2d 689 (La.App. 3rd Cir.1987). The plaintiff in Captain, also a pulpwood contractor, was found not to be totally and permanently disabled where he was simply incapable of returning to his pre-injury pulpwood employment, but was capable of working and was indeed working as a part-time law enforcement officer. Defendants suggest that the plaintiff in Captain was found not to be totally and permanently disabled because, as here, he continued to receive payments for the use of his equipment.
Captain is distinguishable. There, the plaintiff not only maintained part-time employment elsewhere, he also continued to work with his pulpwood crew in a supervisory capacity; here, plaintiff has not worked since his injury. Though he has tried to return to work in a supervisory capacity, the physical limitations on him regarding standing or sitting for extended periods and the difficulties he experienced in traversing uneven terrain on foot have made that impossible.
It can indeed be argued that the plaintiff received a fairly substantial sum of money over a significant period of time for the use of his trucks by his former crew. On the other hand, plaintiff was not in the field during any of the occasions that his trucks were used by his former crew, and he exercised no supervision over them. Plaintiff was obviously not in the business of renting trucks or equipment for when the items became unserviceable, his former crew ceased using them. We view the funds he received as a return on capital rather than labor. Under these circumstances, we conclude that his income does not amount to earnings as contemplated by LSA-R.S. 23:1221(2)(d). See Maire v. Charbonnet, 543 So.2d 544 (La.App. 4th Cir.1989).

BENEFITS
Defendants next argue that the district court erred in its calculation of the amount of benefits to which plaintiff was entitled. At issue is the manner in which the insurance adjuster for Georgia Casualty calculated plaintiff's average weekly wage. The adjuster used "industry standards" in calculating those expenses which plaintiff could normally have expected to incur while an invoice sheet which a companion corporation of A & M provided to Georgia Casualty shortly after the accident contained precise figures on plaintiff's actual expenses.
Plaintiff argues that the district court employed correct methods in calculating his average weekly wage, that a correct application of the "industry standards" calculation would still show him to be entitled to the maximum compensation rate, and that the logical result of defendants' argument would be that plaintiff would have, in the 26 weeks preceding the accident, earned a negative $3000.
The linchpin of defendants' argument is that the district court failed to take into account the average weekly truck expenses plaintiff incurred for fuel and insurance and that the figures reflecting the amount plaintiff paid for labor was substantially underreported.
Defendants' contention with regard to plaintiff's labor expenses is without merit. Interestingly, plaintiff's claimed labor expenses *112 are identical to the amount which the insurance adjuster estimated on the basis of "industry standards." Additionally, the record is void of evidence that plaintiff underreported the amount paid to his laborers.
However, defendants' argument regarding plaintiff's truck expenses has some merit. They assert that the expense sheet fails to adequately reflect plaintiff's expenses, especially for fuel and insurance. Defendants' adjuster testified that "industry standards" indicated that, based upon the number of cords of wood which plaintiff's crew produced in the 26 weeks preceding his injury, his truck expenses should have been approximately $6822, which averages a little more than $260 per week. He testified that this figure takes into account not only fuel, insurance, and maintenance, but also the cost of purchasing the vehicle.
Plaintiff's figures indicated that his truck expenses were $1313.53 for that same 26-week period, which averages $50.48 per week. However, when cross-examined by defendants, he admitted that he had testified in a previous deposition that he paid approximately $1400 per year for insurance on his three trucks, an average of about $27 per week. Additionally, he reaffirmed his deposition testimony that his fuel expenses for the three trucks were some $350 each week, substantially in excess of the $262 weekly average derived from "industry standards."
Having concluded that plaintiff's truck expenses did indeed exceed those contained on the financial breakdown compiled by his employer, we have recalculated his weekly compensation benefits and conclude that plaintiff is not entitled to the maximum compensation rate but instead is entitled to $226.04 per week. Since he is a piece work employee, his wages are to be calculated in accordance with LSA-R.S. 23:1021(10)(d) after deduction of his appropriate expenses. Herrin v. Georgia Casualty and Surety, 414 So.2d 1323 (La.App. 2d Cir. 1982).[2]

MILEAGE
Defendants next complain that the district court awarded plaintiff mileage for traveling from his home in Homer to a pharmacy in Bernice, a distance of approximately 25 miles one way. They argue that there was no showing that the use of that particular pharmacy was necessary. Plaintiff argues that he was instructed by his employer to use this particular pharmacy and, further, that he was unable to procure his medication on credit elsewhere and that he was unable to pay for it outright.
An employer shall be liable for the actual expenses reasonably and necessarily incurred by its employee in order to obtain the services, medicines, and prosthetic devices which the employer is required to furnish under the Act. When the employee *113 uses his own vehicle, he shall be reimbursed at the same rate per mile as established by the state of Louisiana for reimbursement of state employees for use of their personal vehicles on state business. LSA-R.S. 23:1203(C).
Defendants do not argue that plaintiff did not incur mileage in the process of procuring his medication, only that it was neither reasonable nor necessary. The main thrust of their argument is that plaintiff had a pre-existing relationship with this particular pharmacy and used it rather than one closer to his home for that reason.
Contrary to defendants' argument, the record amply supports plaintiff's position. Plaintiff was originally advised by his employer to use the pharmacy in Bernice where it maintained an account. The record supports plaintiff's contention that he was unable to procure medication on credit elsewhere and was financially unable to purchase it himself. Under these circumstances, it was both reasonable and necessary for plaintiff to travel to and from Bernice from his home in Homer to get his medication. The district court conclusion in this regard was not error.

PENALTIES AND ATTORNEY FEES
Defendants finally argue that the district court erred in awarding statutory penalties and attorney fees for their arbitrary and capricious failure to pay the correct amount of compensation benefits and unnecessary delay in paying plaintiff's medical and pharmacy expenses. Plaintiff counters that the record clearly supports such a result because Georgia Casualty's adjuster admitted miscalculating plaintiff's benefits even though he had access to information which would have facilitated an accurate calculation, plaintiff's doctor and pharmacy bills were repeatedly delinquent, even forcing the pharmacy to threaten to cut off plaintiff's credit, and plaintiff was never paid for his mileage to and from the pharmacy. In addition, plaintiff seeks an increase in attorney fees necessitated by having to defend defendants' appeal.
With regard to the failure to pay the correct amount of benefits, defendants argue that there was a legitimate dispute over the correct amount of benefits, citing Olson v. Insurance Company of the State of Pennsylvania, 471 So.2d 1151 (La.App. 3rd Cir.1985), writ denied, 476 So.2d 352 (La.1985), in support. While Olson does state the principle that defendants urge, the circumstances of the case appear to provide more support for plaintiff's position than that of the defendants. Penalties and attorney fees were said to be due because of the defendants' inattention to the plaintiff's claim.
Georgia Casualty received precise financial information from A & M shortly after the injury which would have avoided all confusion or miscalculation. The most significant aspect of the miscalculation involved Georgia Casualty's use of a $20 per cord value toward the determination of plaintiff's gross income, when plaintiff was paid slightly more than $25 per cord, resulting in a shortage of over $7000 to plaintiff.
The argument could be made that plaintiff's compensation rate was not susceptible of precise calculation because, as it later turned out, plaintiff's truck expenses exceeded not only the amounts listed on the financial breakdown compiled by his employer but also the "industry standard" which Georgia Casualty's adjuster used in his calculation. However, defendants' gross miscalculation was not based upon a reasonable dispute over the correct value of plaintiff's expenses, but originated with the use of the wrong value for each cord of wood which plaintiff produced. Additionally, defendants became aware of the correct figures on plaintiff's truck expenses prior to trial and could have reviewed their calculation at that time.
It was not until trial of the matter that Georgia Casualty's adjuster compared his figures to the more accurate ones which he had been supplied. Accordingly, we conclude that this miscalculation and subsequent failure or refusal to review that calculation *114 constitutes a sufficient basis to justify the district court's assessment of penalties and attorney fees.
The remainder of the basis for the award of penalties and attorney fees arises out of the defendants' delay or refusal to pay medical, pharmaceutical, and mileage benefits. Defendants argue that plaintiff's attorney's services were not necessary to recover most of those benefits because they had been paid prior to the institution of suit.
We conclude that the record adequately supports the district court award of penalties and attorney fees. Not only does the record indicate that the defendants underpaid plaintiff's compensation benefits in spite of information which could have very nearly accurately calculated the correct amount due, the defendants unduly delayed paying plaintiff's medical and pharmaceutical bills, in some cases for several months, which threatened a disruption in his treatment. Finally, the defendants never paid any of plaintiff's travel expenses despite the fact that he submitted claims for his travel to and from the pharmacy and doctor.
Plaintiff has filed an answer to defendants' appeal, seeking an increase in attorney fees for defending this appeal. Under the circumstances, which included the preparation and filing of an appellate brief and the preparation for and attendance at oral argument, we conclude that plaintiff is entitled to have the district court award of attorney fees increased by $1,200.
The judgment of the district court is hereby amended to show plaintiff's weekly compensation as $226.04 (rather than $245.00) and to increase the award of attorney fees by the amount of $1200.00 to $8200.00. In all other respects, the judgment of the district court is affirmed at appellants' cost.
AMENDED AND AFFIRMED.
NOTES
[1] Dr. Fox's deposition is unclear on the subject but we presume this to be Dr. George Beach, Shreveport neurosurgeon.
[2] The above result derives from the following calculation: 1364.48 cords of wood @ $25.22 per cord = $34,416.96 gross income.

Expenses: Gross Income 34,416.96
 Labor 8,805.00 Expenses - 23,452.23
 ___________
 Saw 986.05 Net Income 10,964.23
 Truck 9,100.00 No. of days pltf
 Misc. 2,097.06 worked in
 Ice 52.00 previous 26 wks ÷ 130
 ___________
 Payroll 84.34
 Taxes 2,412.12 × 4
 _________ ___________
 23,452.23 337.37
 × .67
 ___________
 226.04