I STEWART, Judge.
Perfect Equipment Corporation (EEC) filed suit against various defendants to seek indemnity or contribution for monies expended in the remediation of a site which the Louisiana Department of Environmental Quality deemed contaminated. PEC also prayed for declaratory judgment that the defendants be declared liable for indemnity or contribution of their portions for whatever remediation costs are incurred in the future. The owners of the property and parties defendant, the McKneelys, filed a motion for summary judgment, which the trial court granted, dismissing the McKneelys from suit. The trial court also declared that PEC failed to state a cause of action against the McKneelys. PEC appeals. We reverse.
FACTS
In 1980, Louisiana Recycling purchased property in Caddo Parish on which to operate a battery reclaiming facility. Louisiana Recycling did not pay property taxes and the site was sold at a tax sale in 1983 to Roland V. McKneely, Sr. From March, 1984 until May, 1985, the site (referred to as the Oil City site) was once again used as a battery reclaiming facility, although allegedly without McKneely’s knowledge. During this time, PEC purchased materials from the site and *700 held a chattel mortgage on certain movables located on the site.
In 1988, Mr. McKneely died, and the property devolved upon his wife, Nellie McKneely, a one-half interest and his three children, Roland V. McKneely, Jr., Evelyn McKneely Young, and Carol McKneely Cardwell, a one-half interest between them, subject to the usufruct of their mother.
On March 31, 1992 PEC received a letter from a representative of the Inactive and Abandoned Sites Division of the Louisiana Department of Environmental Quality (DEQ), informing PEC that it was a potentially responsible party for the remediation of the site. The McKneelys were sent similar letters. ^Potentially responsible parties (PRP’s) are compelled to remediate the site in question when it has been contaminated with hazardous substances. In response, PEC has incurred approximately $25,000 in costs for environmental consultation, although PEC questions its designation as a PRP.
PEC filed suit against the McKneelys, among others, for indemnity or contribution. The McKneelys filed a motion for summary judgment, claiming in their accompanying affidavit that the McKneelys had no contractual relations with PEC nor knowledge of PEC’s activities at the site. The trial court granted a partial summary judgment, dismissing PEC’s demands against the McKneelys with prejudice. The court held that because the McKneelys and PEC did not have a contractual relationship, the McKneelys were not liable. Additionally, the trial court concluded that PEC failed to state a cause of action against the McKneelys. For the following reasons, we reverse and remand.
DISCUSSION
Initially, we briefly address the issue of whether PEC pled a cause of action against the McKneelys. PEC avers in its petition that it was identified as a PRP, incurred over $21,000 in expenses for remediation thus far, and that all parties defendant are absolutely or strictly liable because of their relationships to the property. Moreover, PEC seeks a declaratory judgment that the defendants are liable for contribution for future expenses. We find, and the following discussion of the Louisiana Environmental Quality Act demonstrates, that PEC has pled a cause of action under Revised Statues Title 30, subtitle II, as well as pursuant to LSA-C.C. Arts. 2315 and 2317.
The next issue is whether the trial court erred in granting the McKneelys’ motion for summary judgment. Appellate courts review the granting of a summary |&judgment de novo using the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). Motion for summary judgment is a procedural device to avoid a full scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the party seeking summary judgment is so entitled as a matter of law. LSA-C.C.P. Art. 966; Secimty Nat. Trust v. Kalmback, 613 So.2d 664 (La.App. 2d Cir.1993); Ouachita Nat. Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115 (La.App. 2d Cir.1991), writ denied, 587 So.2d 695 (La.1991).
The moving party has the burden of affirmatively showing the absence of a genuine issue of material fact. Any doubt as to whether a fact is material is to be resolved in favor of the non-moving party. Watson v. Cook, 427 So.2d 1312 (La.App. 2d Cir.1983). To meet his burden, the mover must show that the truth is self-evident and that there exists no real doubt as to the existence of any genuine issue of fact. Watson v. Cook, supra.
Affidavits submitted in support of or in opposition to the motion shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. LSA-C.C.P. Art. 967. Once a motion for summary judgment has been made and supported, the adverse party may not rest on the mere allegations or denials of his plead *701 ings, but must, by affidavit or otherwise, set forth specific facts showing that there is a genuine issue of material fact. Id. Once the mover files sufficient documentation to support his motion, the burden shifts to the | opposing party to prove the existence of material facts. Dement v. Red River Valley Bank, 506 So.2d 1329 (La.App. 2d Cir.1987).
In determining whether the mover has satisfied his burden of proof, the court shall closely scrutinize documents supporting the mover’s position, while treating opposing documents indulgently. Bradford v. Louisiana Dovms, Inc., 606 So.2d 1370 (La.App. 2d Cir.1992). The mere presence of a factual issue will not always defeat a motion for summary judgment. If the mover shows that he is entitled to judgment as a matter of law, a factual issue immaterial to his position will not defeat the motion. Bradford v. Louisiana Downs, Inc., supra.
In 1984, the Louisiana legislature enacted remedial liability statutes for the cleanup of waste sites. This body of law is sometimes referred to as Baby-Superfund because of the resemblance to its progenitors, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERC-LA or Superfund) and the Superfund Amendments and Reauthorization Act of 1986 (SARA), found at 42 U.S.C.A. sec. 9601, et seq. See also Joslyn Mfg. Co. v. T.L. James & Co., Inc., 836 F.Supp. 1264 (W.D.La.1993), affirmed on other grounds, 40 F.3d 750 (5th Cir.1994). The laws in both federal and state arenas contemplate the need for removing hazardous wastes on contaminated properties and authorize the government to demand clean-up from a host of individuals and entities who are or were in some way connected with the site and the hazardous substances thereon. LSA-R.S. 30:2273. Additionally, the laws provide for private recovery of cleanup costs among the involved parties. LSA-R.S. 30:2276(G). Those involved parties are referred to as potentially responsible parties, or PRP’s. Our Superfund law imposes strict liability upon all PRP’s deemed to have contributed to contamination of a particular site. Id.
| sSpecifically, persons or entities are liable to the state for remediation without regard to negligence or knowledge of contamination if they meet any of the following criteria:
(1) Was a generator who generated a hazardous substance which was disposed of or discharged at the pollution source or facility.
(2) Was a transporter who transported a hazardous substance which was disposed of or discharged at the pollution source or facility.
(3) Was a disposer who disposed of or discharge a hazardous substance or hazardous waste at the pollution source or facility.
(4) Contracted with a person for transportation or disposal at the pollution source or facility.
(5) Is or was the owner or operator of the pollution source or facility subsequent to the disposal of hazardous waste. LSA-R.S. 30:2276(A) (1-5) and (B).
LSA-R.S. 30:2276(F) provides that those who have generated, transported, contracted for, or disposed of hazardous substances at a pollution source or facility are presumed liable in solido for site cleanup unless the party shows by a preponderance of the evidence that the costs of remediation should be apportioned. See Joslyn Mfg. Co. v. T.L. James & Co., Inc., su,pra. Current and former owners of the site are also deemed liable pursuant to LSA-R.S. 30:2273(1) which states, “The following persons or entities must comply with and are subject to the provisions of this Chapter: (1) The owner, operator, or lessee of any pollution source or facility.” Those parties who participate in the remediation of the site prior to suit are statutorily authorized to sue the nonpartiei-pating parties for twice their share in a private cost recovery action. LSA-R.S. 30:2276(G).
Pursuant to LSA-R.S. 30:2277 in Chapter 12 of Title 30, Liability for Hazardous Substance Remedial Action, the defenses to liability are that:
(1) The discharge or disposal was caused by an act of God.
|6(2) The discharge or disposal was caused by an act of war.
*702 (3) The discharge or disposal was caused by an act or omission of a third person who was not or is not an employee or agent of the defendant or had a contractual relationship with the defendant and if the defendant establishes that he:
(a) Exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such substance, and
(b) He took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions.
(4) The owner or operator of the pollution source or facility acquired ownership or control of such property through a dation en paiement or through a foreclosure proceeding of a security interest held by the person on that property or holds legal title to or otherwise manages any such property for purposes of administering an estate or trust of which such property is a part, except where such owner or operator:
(a) Has caused a discharge or disposed of a hazardous substance covered by this Chapter; or
(b) Knows at the time the security interest is perfected that the property contains a hazardous substance covered by this Chapter.
Paragraph (4) was added by Acts 1991, No. 773, sec. 1 and was expressly declared as remedial and retroactive by Acts 1990, No. 681, sec. 2.
An additional defense to liability for removal of hazardous waste was added by Acts 1993, No. 930, sec. 1, effective June 25, 1993, and is found at LSA-R.S. 30:2204.1 in Chapter 9 of Title 30. It provides:
No landowner shall be held responsible, by an order of the secretary or the courts, for removal or the cost of removal of hazardous waste which has been disposed of on his land by the act of a third party without his knowledge or reasonable belief thereof or consent or by a fortuitous event. The burden of proof by clear and convincing evidence shall rest with the landowner. The provisions of this Section shall not apply to any landowner engaged in the production, transportation, or disposal of solid or liquid waste with regard to the involvement of any specific property in any such operation.
|7Of primary importance in the case at bar is the issue of whether the McKneelys, as owners of the property, are liable to PEC for contribution for expenses incurred thus far and those to be incurred in the future. Through the evolution of environmental law, we have witnessed increased leniency with respect to those landowners who, for legitimate reasons, do not know that their property is contaminated. For example, CERCLA imposed remedial liability on present property owners regardless of their culpability for or knowledge of the presence of hazardous substances on the premises. Cf. State of New York v. Shore Realty Corp., 759 F.2d 1032 (2d Cir.1985). However, with the enactment of the SARA amendments, current landowners who did not know, or have reason to know, that the property was contaminated could escape liability upon so proving. 42 U.S.C.A. secs. 9601(35) and 9607(b)(3). The Louisiana legislature has not mirrored Congress’ actions, but has passed legislation to narrow the field of liable landowners, as the aforementioned statutes demonstrate.
PEC argues that the trial court committed manifest error in applying LSA-R.S. 30:2204.1, the innocent landowner defense, to absolve the McKneelys of liability. PEC bases its contention on its theory that R.S. 30:2204.1 is inapplicable because it is found at chapter 9 of the Louisiana Environmental Quality Act, while all the remedial liability language is contained in Chapter 12. However, the language of Louisiana’s innocent landowner defense is similar to that found in the federal Superfund statutes. Furthermore, the other Superfund defenses are substantially the same as ours. Although the legislature’s placement of the innocent landowner defense creates a bit of confusion as to the scope of its application, the statute’s terms are clear and unambiguous. LSA-C.C. Art. 9. Therefore, LSA-R.S. 30:2204.1 is a viable defense to liability for remediation.
*703 |gOur next inquiry is whether this defense can be applied to shield the McKneelys from liability. LSA-R.S. 30:2204.1 went into effect on June 25, 1993. The record in the instant case does not reveal when PEC took remedial action. However, suit was filed on March 17, 1993, one week after PEC made demand upon Nellie McKneely for contribution. Hence, the threshold question is whether LSA-R.S. 30:2204.1 may be applied retroactively.
According to the Civil Code, procedural and interpretive laws apply both prospectively and retroactively unless there is contrary legislative expression, while substantive laws apply prospectively only. LSA-C.C. Art. 6. See also Cole v. Celotex Corp., 599 So.2d 1058 (La.1992). Additionally, LSA-R.S. 1:2 provides that no statute is retroactive unless it is expressly so stated. It does not distinguish between substantive, procedural and interpretive laws as does article 6, but is generally construed as being co-extensive. Rousselle v. Plaquemines Parish School Board, 93-1916 (La.02/28/94), 633 So.2d 1235; St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809 (La.1992).
Civil Code Article 6 requires a twofold inquiry. First, it must be ascertained whether the enactment expresses legislative intent regarding retrospective or prospective application. If such intent is expressed, the inquiry ends. If no such intent is expressed, the enactment must be classified as either substantive, procedural or interpretive. Rousselle v. Plaquemines Parish School Board, supra; St. Paul Fire & Marine Ins. Co. v. Smith, supra; Cole v. Celotex Corp., supra.
A law is substantive if it either establishes new rules, rights, and duties or changes existing ones. A law is interpretive if it merely establishes the meaning the statute intended from the time of its enactment. A law is procedural if it prescribes a method for enforcing a substantive right and relates to the form of the proceeding | gor the operation of the laws. Rousselle v. Plaquemines Parish School Board, supra. However, because application of laws has constitutional implications under the due process and contract clauses of both the United States and the Louisiana Constitutions, even where the legislature has expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights. Segura v. Frank, 93-1271, 93-1401 (La. 01/14/94), 630 So.2d 714.
The obvious effect of LSA-R.S. 30:2204.1, as previously stated, is to shield an innocent landowner by allowing that “no landowner shall be held responsible, by ... the courts for removal.... ” However, PEC argues that this statute effectively robs PEC of a vested right to bring in a landowner as a solidary obligor. When vested rights are jeopardized, constitutional protections step in. Thus, the question becomes whether PEC would, in fact, lose a vested right if LSA-R.S. 30:2204.1 were applied retroactively-
This is an issue of first impression in Louisiana, therefore, we resort to federal law for guidance. Although CERCLA is without express Congressional intent as to its application, jurisprudence dictates that CERCLA is to be applied retroactively. Cf. U.S. v. Northeastern Pharmaceutical & Chemical Co., Inc. 810 F.2d 726 (8th Cir.1986); United States v. Hooker Chemicals & Plastics Corp., 680 F.Supp. 546 (W.D.N.Y.1988); U.S. v. Shell Oil Co., 605 F.Supp. 1064 (D.Colo.1985). It has been determined that, while certain activities involving hazardous substances were not contrary to law prior to the enactment of CERCLA, it was foreseeable at the time that improper disposal could be potentially dangerous to the environment. U.S. v. Monsanto Co., 858 F.2d 160 (4th Cir.1988). As stated in U.S. v. Monsanto Co.,
| iqCERCLA operates remedially to spread the costs of responding to improper waste disposal among all paHies that played a role in creating the hazardous conditions. Where those conditions are indivisible, joint and several liability is logical, and it works to ensure complete cost recovery, (emphasis added).
Hence, the consequences of CERCLA are not so harsh as to violate federal due process. U.S. v. Monsanto Co., supra.
*704 Applying that reasoning to the instant case, we agree that Louisiana’s Superfund was designed to require all responsible parties to literally clean up their messes. Yet the laws are not so harsh as to saddle one of many responsible parties with that duty; hence, private cost recovery actions. Nevertheless, the key phrase, as emphasized above, is to distribute the costs among the responsible parties. Truly innocent landowners are not responsible for whatever contamination plagues their property. It appears to us that the legislature’s intention all along was to seek remediation from those responsible, as opposed to burdening tax payers or implementing some other arbitrary method for amassing the required funds. For those reasons, we find that LSA-R.S. 30:2204.1 was intended to be remedial, that is to say, interpretive, in nature and is therefore to be applied both retroactively and prospectively.
That resolved, our inquiry is still not complete. LSA-R.S. 30:2204.1 requires proof by clear and convincing evidence that the landowner neither knew nor had reason to know that his property was being contaminated. Clear and convincing evidence is appropriately characterized as a degree of evidence greater than a preponderance of the evidence but less than beyond a reasonable doubt. France v. A & M Wood Co., 566 So.2d 106 (La.App. 2d Cir.1990); Louisiana State Bar Assoc, v. Ed/wins, 329 So.2d 437 (La.1976). Thus, the issue is whether the | uMcKneelys provided sufficient proof to warrant the granting of a motion for summary judgment in their favor.
The McKneelys introduced into evidence the affidavit of Roland V. McKneely, Jr., whose father purchased the land. In the affidavit, McKneely states that his mother, his sisters, and he would have known if his father had a contractual relationship with PEC. Moreover, he states that “there is not and there never has been any contractual relationship between PEC and the McKnee-lys, and any activities of PEC at the tract were without the knowledge or consent of the McKneelys.” Furthermore, McKneely states that the McKneelys neither knew nor consented to the presence of any hazardous materials at the Oil City site. What McKneely fails to mention, however, is whether he or his family knew that a battery reclaiming facility operated on the site. The answer to this question would have shed light on whether the McKneelys had reason to know that the property was being contaminated.
PEC filed a statement of uncontested facts in connection with its brief in opposition to the motion for summary judgment. It is not made by affidavit and is not signed by the McKneelys; the only signature being that of PEC’s attorney. These facts were never stipulated to at oral argument before the trial court. Nevertheless, both sides agree about some of the facts. One fact which the parties cannot reconcile, however, is whether the McKneelys knew about the battery reclaiming facility’s operations at the Oil City site.
Based on their disagreement and because McKneely failed to include a definitive statement in his affidavit as to his family’s knowledge of the presence of the battery reclaiming facility, we cannot say that proof has been made by clear and convincing evidence that the McKneelys are innocent landowners. Therefore, we l^find that the trial court erred in granting the motion for summary judgment in favor of the McKneelys.
CONCLUSION
We find that the trial court erred in finding that PEC failed to state a cause of action in this case for indemnity or contribution of expenses incurred in the remediation a hazardous waste site. The trial court also erred in granting a motion for summary judgment in favor of the McKneelys because the McKneelys failed to prove by clear and convincing evidence that there was no genuine issue of material fact in dispute as to whether the McKneelys knew, or had reason to know, that hazardous waste activities were carried out on their property. We reverse and remand to the trial court for further proceedings consistent with this judgment. Costs of the appeal are assessed against the McKnee-lys.
REVERSED AND REMANDED.